PLEASANT VIEW FARMS DEVELOPMENT, INC., ET AL. *v.*
ZONING BOARD OF APPEALS OF THE
TOWN OF WALLINGFORD

PETERS, C. J., SHEA, GLASS, COVELLO and BORDEN, JS.

Argued January 10—decision released April 9, 1991

*Edward Loughlin,* with whom were *David M. Krassner* and, on the brief, *Ann H. Rubin,* for the appellants (plaintiffs).

*Janis M. Small,* for the appellee (defendant).

COVELLO, J. This is an appeal from a judgment of the Superior Court that affirmed a decision of the Wallingford zoning board of appeals (ZBA). The ZBA determined that the plaintiffs did not have the authority to operate a used car dealership in a rural RU-40 zone.[1] The issue presented is whether the plaintiffs' evidence was factually and legally sufficient to support their claimed right to such a use based upon: (1) two prior variances granted to the plaintiffs' predecessor in title; or (2) a preexisting nonconforming use of the property. We affirm the trial court's decision that concluded that the ZBA correctly determined that such a use was not permitted.

The record discloses that the plaintiffs are the owners of a forty-five acre parcel at 100 Pond Hill Road also known as Clintonville Road, Wallingford. The property is in a rural RU-40 zone where used car dealerships are not permitted. On December 8, 1971, Robert

---

[1] General Statutes § 8-8 (a) provides in part: "Any person . . . aggrieved by any decision of said [zoning board of appeals] . . . may, within fifteen days from the date when notice of such decision was published in a newspaper . . . take an appeal to the superior court for the judicial district in which such municipality is located. . . ."

Fritz, the Wallingford zoning officer, executed a certificate of approval for the operation of a used car dealership on the Clintonville Road premises.[2] The certificate stated: "[Public] hearing was waived because the local authority had previously approved such use for this location."[3] On April 7, 1972, the commissioner of motor vehicles issued a used car dealer's license for the Clintonville Road premises to Hillview Equipment Sales, Inc., the plaintiffs' predecessor.[4] Hillview Equipment Sales, Inc., renewed the license annually thereafter through 1990.

On October 6, 1988, the Wallingford zoning enforcement officer issued an opinion that "a valid dealer's and repairer's [license] does not exist on property at 100 Pond Hill Road because the property has always been zoned residential . . . ." On December 19, 1988, the plaintiffs having appealed, the Wallingford zoning board of appeals confirmed the zoning enforcement officer's decision. The plaintiffs thereafter appealed to Superior Court which, in turn, affirmed the ZBA's action.[5] The Appellate Court thereafter granted the

[2] General Statutes § 14-54 provides in part: "Any person who desires to obtain a license for dealing in . . . motor vehicles shall first obtain and present to the commissioner [of motor vehicles] a certificate of approval of the location for which such license is desired from . . . the [zoning] board of appeals."

[3] General Statutes § 14-55 provides in part: "[T]he local authorities . . . shall . . . upon receipt of an application for a certificate of approval . . . assign the same for hearing within sixty-five days of the receipt of such application. . . . In any case in which such approval has been previously granted for any location, the local authority may . . . waive the requirement of a hearing on a subsequent application."

[4] General Statutes § 14-52 (a) provides in part: "No person, firm or corporation may engage in the business of the buying, selling, offering for sale or brokerage of any motor vehicle . . . without having been issued either a new car dealer's, a used car dealer's, a repairer's or a limited repairer's license. . . . Each such license shall be renewed annually . . . ."

[5] While the record is unclear as to exactly what the zoning enforcement officer did, the plaintiffs, the Wallingford zoning board of appeals and the

plaintiffs' petition for certification limited to the question of whether the use of the premises for the business of an automobile dealer and repairer was authorized pursuant to previously granted zoning variances or as a valid nonconforming use. We transferred the plaintiffs' appeal to this court in accordance with Practice Book § 4023.

I

The plaintiffs first claim that the ZBA and the trial court improperly determined that two earlier variances had not authorized the automobile dealer's use on the Clintonville Road premises. The first application, dated February 28, 1968, sought a variance to "build additions to present bldgs [sic] and continue uses on property which include as per recorded on plot plan." The ZBA granted the application "as per plot plan on file. To include the additional uses and expansions of the property as listed on the reverse side of the plot plan." The reverse side of the plot plan stated: "Also for the expansion or continued use of the property for the following purposes: sales & services of fruit, vegetable, poultry & dairy food products; retail business or rental service occupation buildings; freezer & cold storage warehousing—wholesale & retail; warehousing of trucks & machinery; sale of loam or nursery products; processing and bottling or packaging of beverages—mainly apples & other fruits."

The second application, dated February 19, 1971, sought permission "to repair and sell travel trailers and boats." The ZBA granted the application subject to the following: "Stipulation. All work, equipment and displays must be in one building under cover."

trial court all treated the officer's opinion of October 6, 1988, as constituting an order to cease operating a used car dealership on the Clintonville Road premises.

On December 15, 1986, the ZBA conducted a public hearing on an appeal from a cease and desist order entered by the Wallingford zoning enforcement officer that terminated the use of the Clintonville Road premises "for rented commercial warehouse and/or storage space." Following an exhaustive examination of the history of the uses on the property, the ZBA voted: "To deny the cease and desist order with the following stipulations: (1) That the continuing uses as specified in the 1968 variance are valid subject to proper inspection and permits by the Planning and Zoning Department. (2) That an inspection of square footage must be undertaken by the Town Planner's office for future control of the property. (3) No addition shall take place without proper application. (4) The 1968 variance applies only to the 6 plus or minus acres specified on the original variance, and any commercial use on the remainder of the property shall be discontinued as called for by the cease and desist order."

The plaintiffs argue that within the totality of all of the foregoing there is a sufficient factual basis to support their contention that the ZBA had granted a variance to operate a used car dealership and that the ZBA and the trial court improperly failed to conclude that this was the case. The plaintiffs claim that even though there is no express language authorizing a used car dealership, the broad, general language contained in the 1968 variance constitutes sufficient authority to warrant the establishment of such a dealership.

In reviewing the actions of a zoning board of appeals we note that such a board is " 'endowed with a liberal discretion, and its [actions are] subject to review by the courts only to determine whether [they were] unreasonable, arbitrary or illegal.' " *Schwartz* v. *Planning & Zoning Commission,* 208 Conn. 146, 152, 543 A.2d 1339 (1988). " 'The burden of proof to demonstrate that the board acted improperly' " is upon the party seek-

ing to overturn the board's decision. *Adolphson* v. *Zoning Board of Appeals,* 205 Conn. 703, 707, 535 A.2d 799 (1988), quoting *Whittaker* v. *Zoning Board of Appeals,* 179 Conn. 650, 654, 427 A.2d 1346 (1980). In an appeal from the decision of a zoning board, we therefore review the record to determine whether there is factual support for the board's decision, not for the contentions of the applicant.

While the 1968 variance contains a general authority to use the property for "Retail business or Rental Service . . . [and] warehousing of Trucks & Machinery," we agree with the trial court's conclusion that this language is simply inadequate to support the conclusion that the ZBA intended to grant a wide-ranging variance that included within it the authority to operate a used car dealership. Both the plaintiffs' predecessor and the ZBA seemingly shared this view as borne out by the 1971 application for a variance to repair and sell travel trailers and boats. Had the 1968 variance actually granted a broad, general authority to conduct retail sales of whatever sort, such an authority would have embraced the sale of travel trailers and boats. Thus, there would have been no necessity for the 1971 variance. A general authority to conduct unspecified retail sales would also be inconsistent with the oft-stated proposition that "the power to grant variances from the strict application of zoning ordinances should be carefully and sparingly exercised. *Celentano* v. *Zoning Board of Appeals,* 136 Conn. 584, 587, 73 A.2d 101 [1950]; *Kamerman* v. *LeRoy,* 133 Conn. 232, 235, 50 A.2d 175 [1946]." *Plumb* v. *Board of Zoning Appeals,* 141 Conn. 595, 599, 108 A.2d 899 (1954). "[U]nless great caution is used and variances are granted only in proper cases, the whole fabric of town- and city-wide zoning will be worn through in spots and raveled at the edges until its purpose in protecting the property values and securing the orderly development of the commu-

nity is completely thwarted." *Gregorio* v. *Zoning Board of Appeals,* 155 Conn. 422, 427, 232 A.2d 330 (1967). The power to authorize a variance "is only granted for relief in specific and exceptional instances." *DeFelice* v. *Zoning Board of Appeals,* 130 Conn. 156, 164, 32 A.2d 635 (1943).

We note further that the use of a general authority to establish an unspecified retail use in a rural district, in which retail sales are limited to farm stands,[6] would constitute an unauthorized usurpation of the legislative function to determine land use, a function that is customarily committed to zoning commissions. A variance "should not be used to accomplish what is in effect a substantial change in the uses permitted in a [rural] zone. . . . *Greenwich Gas Co.* v. *Tuthill,* 113 Conn. 684, 694, 155 A. 850 [1931]." *Heady* v. *Zoning Board of Appeals,* 139 Conn. 463, 468, 94 A.2d 789 (1953). "Arguments concerning the general unsuitability [or suitability] of a neighborhood to the zoning classification in which it has been placed are properly addressed to the promulgators of the ordinance and not to those who have been empowered to grant variances." *Ward* v. *Zoning Board of Appeals,* 153 Conn. 141, 145, 215 A.2d 104 (1965).

## II

The plaintiffs alternatively claim to have proven the existence of a valid nonconforming use through continuous operation of a used car dealership on the Clintonville Road premises from a time that predated the

---

[6] Section 4.2 (c) of the Wallingford Zoning Regulations provides: "The following permitted uses [within a Rural District] require approval of a Special Permit. . . . 2. A temporary stand for the sale of farm and garden produce raised on the premises . . . . The granting of a Special Permit for a temporary stand shall not be construed at a later date as a legally existing nonconforming use."

1958 enactment of the Wallingford zoning regulations and the creation of the rural RU-40 zone.[7]

"A non-conforming use is merely an 'existing use' the continuance of which is authorized by the zoning regulations." *Melody* v. *Zoning Board of Appeals*, 158 Conn. 516, 519, 264 A.2d 572 (1969). "In the determination whether a particular use is permitted or nonconforming, the question is one of expressed intent as stated in the zoning regulations, which are basically legislative enactments, and such intent must be found from the intent expressed in the regulations construed as a whole." *Melody* v. *Zoning Board of Appeals*, supra, 519. Section 6.13 of the Wallingford zoning regulations, adopted on November 7, 1958, specifically defines a nonconforming use as "one which existed lawfully, whether by variance or otherwise, on the date these zoning regulations . . . became effective." See footnote 7, supra. In the absence of a finding that variances sanctioned the plaintiffs' use of their property as a used car dealership, the only alternative factual predicate to a claim of a valid nonconforming use in this instance, would be a finding that a used car dealership was operating on the Clintonville Road premises prior to November 7, 1958. The plaintiffs bear the burden of proving the existence of such a nonconforming use. *Friedson* v. *Westport*, 181 Conn. 230, 234, 435 A.2d 17 (1980).

---

[7] Section 6.13 of the Wallingford Zoning Regulations provides: "A nonconforming use, structure or lot is one which existed lawfully, whether by variance or otherwise, on the date these zoning regulations or any amendment thereto became effective, and which fails to conform to one or more of the applicable zoning regulations or such amendment thereto.

"Such non-conformities are incompatible with and detrimental to permitted uses, structures, and lots in the zoning districts in which they are located; they inhibit present and future development of nearby properties; and they confer upon their owners and users a position of unfair advantage.

"It is a fundamental principle of zoning law that non-conformities are not to be expanded, and that they should be abolished or reduced to conformity as quickly as the fair interests of the parties will permit. This principle is declared to be the intent of this regulation."

In this connection, the record discloses that Hillview Equipment Sales, Inc., had conducted business on an uninterrupted basis with a valid used car dealer's or repairer's license since September 30, 1972. The license had been issued presumably upon the basis of Fritz' December 8, 1971 certificate that stated: "the local authority had previously approved such use for this location." We have earlier determined that the previous approvals did not include the used car dealership. Despite the number and variety of uses claimed for the property, there is nothing in the record to establish a link to a use that predates November 7, 1958, the effective date of the current version of the Wallingford zoning regulations. Since there was no such proof, and the defendant neither admitted nor conceded that this was the case, neither the ZBA nor the trial court improperly concluded that a valid nonconforming use did not exist.[8]

The judgment is affirmed.

In this opinion the other justices concurred.

---

[8] The fact that other similar uses of the property may qualify as nonconforming uses does not change our analysis. "[N]onconforming uses should be abolished or reduced to conformity as quickly as the fair interest of the parties will permit. In no case should they be allowed to increase." *Salerni* v. *Scheuy,* 140 Conn. 566, 570, 102 A.2d 528 (1954).