[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from the decision of the defendant Zoning Board of Appeals of the city of Norwalk ("the board") denying plaintiff's appeal of an order of the Norwalk Zoning Inspector which found his garage to be in violation of the zoning regulations, and in the alternative denying his request for a variance of regulations which require that an accessory structure be situated on the same lot as the principal structure.
The material facts are not disputed and are stated in the plaintiff's Trial Brief as follows:
The plaintiff, Albert Zesiger, is the owner of waterfront land on Wilson's Cove at 75 Bluff Avenue in the Rowayton section of Norwalk, Connecticut (hereinafter "Bluff Avenue parcel"). The property is zoned Residence "A". Mr. Zesiger also owns Tavern Island, which is located directly opposite the Bluff Avenue parcel but approximately one-half mile off-shore (hereinafter "island parcel"). The island parcel is improved with a residential dwelling and a caretaker's house, which are used year-round by the applicant and his seven children. Since the island is not accessible by motor vehicle, the plaintiff and his family are required to park and store their vehicle on shore before using the landing on the Bluff Avenue parcel to boat to their home on the island. After obtaining permits to construct a house and garage on the Bluff Avenue parcel, Mr. Zesiger began by erecting the garage, which was to be used in connection with the to-be-constructed Bluff Avenue house as well as the residence on the island parcel. After the garage was completed however, the plaintiff's situation changed so that it was no longer feasible to build the Bluff Avenue house. Nonetheless, Mr. Zesiger still needed a garage on shore to use in connection with his island parcel and he proceeded to use the garage for that purpose. The Zoning Inspector of the City of Norwalk notified the plaintiff that his use of the Bluff Avenue garage without a residential dwelling on the same parcel was in violation of the zoning regulations and he directed that the proposed residential dwelling be constructed. Mr. Zesiger does not have the need for a residential dwelling on the property. CT Page 8993
By application dated August 17, 1989 plaintiff took an appeal to the defendant Board, requesting that the zoning inspector's order be reversed or, in the alternative, that plaintiff be granted a variance of certain zoning regulations. (ROR No. 1). Notice of a public hearing on the application was published in the Norwalk Hour on October 7 and 16, 1989 (ROR No. 6), and the public hearing was held on October 19, 1989. (ROR Nos. 4 and 5).
On October 19, 1989 the board voted 4-1 to deny the appeal and 2-3 to deny the variance (an affirmative vote of four members was required to grant the variance). (ROR Nos. 4 and 5). Notice of the decision was published in the Norwalk Hour on October 25, 1989. (ROR No. 9). Plaintiff served this appeal on the defendant on November 8, 1989. The court finds that the appeal is timely, having been served within fifteen days of the date notice of the decision was published. See General Statutes8-8; Conn. Pub. Acts No. 90-286 1, 3, 9 (1990).
In ruling on plaintiff's application the board acted pursuant to General Statutes 8-6, 8-6a and 8-7, and its own regulations. Plaintiff takes this appeal pursuant to General Statutes 8-8.
To maintain an appeal from the board's decision pursuant to General Statutes 8-8, plaintiff must be aggrieved by that decision. Primerica v. Planning Zoning Commission, 211 Conn. 85,92, 558 A.2d 646 (1989). The owner of the affected property is considered aggrieved. Bossert Corp. v. Norwalk, 157 Conn. 279,284, 253 A.2d 39 (1968). At the hearing held before this court on June 19, 1991 aggrievement was found.
Scope of Review
 In reviewing the actions of a zoning board of appeals we note that such a board is "endowed with a liberal discretion, and its [actions are] subject to review by the courts only to determine whether [they were] unreasonable, arbitrary or illegal." Schwartz v. Planning Zoning Commission, 208 Conn. 146, 152, 543 A.2d 1339 (1988).
Pleasant View Farms Development, Inc. v. Zoning Board of Appeals, 218 Conn. 265, 269 (1991). On appeal, the plaintiff has the burden of proving that the board's action was improper. Id. at 269-70. The court's function is to review the record to determine whether the board's decision is supported by facts in the record. Id. at 270. CT Page 8994
Denial of Zesiger's Appeal of the Zoning Inspector's Order
By Notice of a Violation and Order to Comply dated July 6, 1989, plaintiff was notified that he was in violation of sections 118-330A, B, C(4) and 910, 1420 G, L of the Zoning Ordinance of the City of Norwalk and section 8-12 of the General Statutes. (ROR No. 1). The Notice specifically stated that plaintiff was in violation because of his failure to complete permits as issued, failure to obtain a Certificate of Compliance, allowing a permit to expire, and maintaining an accessory use without a main use, all relative to property located at 75 Bluff Avenue. (ROR No. 1).
The zoning inspector's report to the board stated:
 As indicated by the applicant a permit was approved (copy enclosed) for a house and a garage. The garage was built but not the house. No Certificate of Occupancy (C.O.) has been issued. Section 1420G requires a C.O. but I cannot issue one since the house was not built and the permit was not properly completed. The project did not include the use of the Island, a separate property with its own permits.
(ROR No. 1). The plaintiff appealed the zoning inspector's order to the board on August 22, 1989, Application #89-1019-02 (ROR #1). The appeal stated:
 Applicant is requesting that this Board find that he has not violated sections 118-330A, B, C(4) and 910, 142G and L in that, under circumstances when Applicant is owner of both residential premises on a Norwalk Island and residential garage on the mainland, to be used solely in connection with the residential use on the island, be deemed a permitted use.
(ROR No. 1. Schedule B).
The board denied plaintiff's appeal by a vote of 4-1, finding that the Code Enforcement officer's interpretation of the zoning code was correct, in that the code requires that no accessory structure be built separate and apart from the primary structure. (ROR No. 4).
The plaintiff contends that the board acted illegally, arbitrarily and in abuse of its discretion in upholding the Zoning Inspector's Order. His basic claim is that the Zoning CT Page 8995 Inspector's interpretation of the regulations is too strict. He argues that "[t]he regulations, as they exist must be read as not specifically laying out each and every permitted use that can ever be made of a piece of property." (Plaintiff's Trial Brief, p. 10). Plaintiff contends that consistent with the intent of the regulations, a garage can be built on the mainland to service an island parcel when both parcels are commonly owned. However, the plaintiff cites no authority for this proposition.
Plaintiff also argues that even if the regulations are strictly interpreted, the Zoning Inspector's interpretation was incorrect because section 118-330B(4) states the purpose of the A residence zone is to provide areas for single family dwellings and other compatible uses, and section 118-330B9(4) permits accessory uses which are incidental and customarily associated with the principal use of the premises. He also states that it is clear that at some point a residence will be built on the Bluff Avenue parcel, at which time the garage will be located on the same lot as the dwelling as required by section 118-910J. Finally, he asks the court to consider the uniqueness of his situation, stating "[t]he applicable zoning regulations apply only to the typical situation where both the accessory structure and the primary structure are located on land and not when one, as is the primary structure in this case, is located on an island." (Plaintiff's Trial Brief p. 12). However, the plaintiff cites no authority for this novel proposition, either.
The board argues that the ordinances are clear, and plaintiff's arguments are simply unconvincing. The board contends that section 118-910J says what it says, and what it says is not a matter of strict or non-strict interpretation. The board's position is that the conclusions under the relevant ordinances were the only conclusions which could have been made.
It is the function of the trial court to determine whether the board correctly interpreted the regulations and applied them with reasonable discretion to the facts. Thorne v. Zoning Board of Appeals, 156 Conn. 619, 620, 238 A.2d 400 (1968). It was the board's function to decide whether and how the regulations applied to the given situation. Schwartz v. Planning Zoning Commission, 208 Conn. 146, 152, 543 A.2d 1339 (1988). "On appeal, a reviewing court reviews the record of the administrative proceedings to determine whether the commission or the board `"has acted fairly or with proper motives or upon valid reasons.'" (citations omitted)." Id., 152.
Being in derogation of common law, zoning regulations and ordinances must be strictly construed. Schwartz, supra, 153. "These regulations must be interpreted in accordance with the CT Page 8996 ordinary rule of statutory construction that, where the language of the statute is clear and unambiguous, courts cannot by construction read into the statutes provisions which are not clearly stated." Id.
The sections of the Building Zone Regulations relevant to this appeal are the following:
 118-330. A Residence Zones. [Added effective 9-14-77]
 A. Purpose and intent. It is the purpose of this zone to provide areas for single-family dwellings and other compatible uses on lots with an area of twelve thousand five hundred (12,500) square feet or more. Certain other uses consistent with the allowed density may be permitted by Special Permit. It is intended that all uses be harmonious with local street characteristics and the limitation of available utilities and other public services.
B. Uses and structures.
 (1) Principal uses and structures. In an A Residence Zone, premises shall be used and buildings shall be erected which are used, designed or intended to be used for one
 (1) of the following uses and no others:
(a) Single-family detached dwelling.
(b) Parks and playgrounds.
 (c) Farms, truck gardens, nurseries and greenhouses, provided that all produce is cultivated on the premises. No roadside stands shall be permitted.
 (2) Special Permit uses and structures. The following uses shall be permitted by Special Permit in accordance with the provisions of Article 140, 118-1450, Special Permits, and shall comply with the Schedule of Residential Uses and any additional standards set CT Page 8997 forth herein:
(a) Public museums. [Added effective 6-12-87]
(b) Places of worship, churches and church buildings.
(c) Schools.
(d) Public utility supply or storage facilities.
(e) (Reserved)
(f) Public and private colleges and universities.
 (g) Schools or institutions for be mentally retarded, physically handicapped or the emotionally or developmentally disabled.
(h) (Reserved)
(i) Cemeteries.
(j) Golf clubs.
(k) Youth day camps. [Added effective 6-12-87]
(l) Firehouses.
(m) Conservation development [Added effective 3-13-81]
(n) Waterfront clubs. [Added effective 3-11-83]
 (o) Convalescent or nursing homes, subject to a minimum lot size of three (3) acres. Off-street parking shall comply with the building setbacks set forth in the Schedule of Residential. [Added effective 6-12-87]
 (p) Congregate housing. Subject to a minimum lot size of three (3) acres, and off-street parking shall comply with the building setbacks set forth in the Schedule of Residential Uses [Added effective 6-12-87]
 (q) Nursery schools or child day care centers, provided that the facility is an accessory use which is incidental to the principal use of the premises, which shall be limited to colleges and universities, schools or a place of worship, and subject to the provisions of 118-910. [Added effective 1-15-88]
CT Page 8998
118-910. Location of accessory buildings in residence zones.
Accessory buildings in residence zones shall conform to the following regulations as to their location upon the lot: . . .
 J. The accessory building or structure shall be located on the same lot as the primary structure. In subdivisions, the Commission may allow an accessory structure to exist on a separate lot for a two-year maximum, subject to the posting of a surety in sufficient amount to guarantee its removal at the end of that period, if no primary building has been constructed on that lot. [Added effective 3-1-85]
The court concludes that these regulations plainly require an accessory structure such as plaintiff's garage to be situated on the same lot as the primary structure. In this case, plaintiff has an accessory structure situated on a parcel which does not contain a principle structure. The board found that the code requires that such accessory structure not be built separate and apart from the primary structure. (ROR No. 4).
The court concludes that the board correctly interpreted and applied the regulations to the plaintiff's situation, and the record supports their decision to deny his appeal. In addition, contrary to plaintiff's assertion, it is not at all clear from the record that a residence will be built "at some point."
Finally the plaintiff's position that his unique situation is beyond the scope of the zoning regulations is without support in the law. For the foregoing reasons, plaintiff's appeal of the board's denial of his appeal of the zoning inspector's order is dismissed.
Denial of Zesiger's Application for a Variance
By application #89-1019-02 (ROR No. 1) plaintiff requested a variance for zoning regulations section 118-330A, B, C(4) and 910, 1420G and L to permit the continued use and maintenance of the garage without a principal use. (ROR No. 4). In Schedule B attached to his application plaintiff stated that he "shall suffer undue and unnecessary hardship if prohibited by Zoning regulations from using nearby mainland property for the placement of a garage to allow the parking of cars and other vehicles or equipment." (ROR No. 1). He further stated that changes in his personal and economic situation made construction of a dwelling on Bluff Avenue neither required nor desirable. (ROR No. 1).
The defendant Zoning Board of Appeals denied the CT Page 8999 application at its October 19, 1989 meeting. (ROR No. 9, 4, 5). The minutes and verbatim transcript of the hearing and the board's executive session (ROR Nos. 54 and 5) indicate that the decision was based on a lack of showing of hardship or unusual circumstance by plaintiff, specifically "no hardship was shown in that the garage can be added to to be used as a, as a principal use, as a house. . . ." (ROR No. 5 p. 39). In addition, the board members opposing the variance stated that the regulations provide that an accessory use can only be built where there is a principal use, and that the zoning inspector was correct in deciding that the permit was for a house and a garage, and that all the properties in the area have houses. (ROR Nos. 4 and 5).
The Parties' Arguments
The plaintiff claims that the board's denial of his request for a variance was illegal, arbitrary and an abuse of discretion. He claims that he has met the requirement for a variance under General Statutes 8-6 (3) and Norwalk Building Zone Regulation Section 118-1410A(3) in that "(1) the requested variance would not affect substantially the comprehensive zoning plan and (2) adherence to the strict letter of the ordinance would cause unusual hardship to Mr. Zesiger, which hardship was unnecessary to the carrying out of the general purpose of the zoning plan." (Plaintiff's Trial Brief, p. 14). Plaintiff claims that because he met these requirements, the board was required to issue the variance, and failure to do so constitutes illegal and arbitrary conduct. (Id.).
Plaintiff argues that because the garage on Bluff Avenue is an accessory to the primary residential structure on the island, the variance would not affect substantially the comprehensive plan. He contends that the use of the Bluff Avenue parcel is in keeping with the residential character of the neighborhood. Regarding the second requirement for a variance, he argues that his situation is unique in that he owns an island improved with a dwelling, which is accessible only by boat and requires him to park and store vehicles elsewhere. He asserts that his hardship arises from the nature of the property itself and from conditions beyond his control. He also contends that the board focused on the wrong hardship because "[t]he hardship is not what can be done to the property, but rather, the fact that a garage is necessary as an accessory to the island parcel but cannot be located on that parcel while it can, practically speaking, be located on the Waterfront parcel." (Plaintiff's Trial Brief, pp. 18-19).
In his Supplemental Trial Brief the plaintiff argues that his deed to Tavern Island conveyed the island together with an CT Page 9000 easement of way and use over the Bluff Avenue parcel, and this is evidence of the necessity of an onshore parking and storage area. "In light of the status of the title of the two parcels in question, [he owns both now], which effectively joins the two parcels, the plaintiff should be allowed to maintain a garage on the Bluff Avenue parcel to serve the island parcel without also being required to erect a single family dwelling, which is, at this time, unnecessary and unwanted." (Plaintiff's Supplemental Trial Brief, p. 3). He also contends that the easement in the deeds is evidence that he is different than other residents of the city. It is noted that the points which the plaintiff raises in his Supplemental Trial Brief were never raised before the board, and the deeds are not part of the record.
The defendant board argues that its denial of the variance was proper because if there is a hardship, it was self-created. "The plaintiff tore down a legal structure on the land and obtained a permit to build a house with a garage to replace it. plaintiff only constructed the garage, all of which precipitated the actions being appealed it is ludicrous for the Plaintiff to argue a hardship in this case." (Defendants' Trial Brief, p. 2). The defendant also argues that the matters argued in Plaintiff's Supplemental Trial Brief were not before the board.
The Standard for a Variance
 `A variance is authority granted to the owner to use his property in a manner forbidden by the zoning regulations. . . .The power of the board to grant a variance should be used only where a situation falls fully within the specified requirements. . . .Thus, the power to grant a variance should be sparingly exercised.' Allen v. Zoning Board of Appeals, 155 Conn. 506, 510, 235 A.2d 654 (1967).
Kaeser v. Zoning Board of Appeals, 218 Conn. 438, 445 (1991). To justify granting a variance under General Statutes 8-6 (3) requires two conditions be met: first, the variance must be shown not to affect substantially the comprehensive zoning plan and second, adherence to the strict letter of the regulations must be shown to cause unusual hardship not necessary to the carrying out of the general purpose of the zoning plan. Spencer v. Zoning Board of Appeals, 15 Conn. App. 387, 389, 544 A.2d 676
(1988); see also Smith v. Zoning Board of Appeals, 174 Conn. 323,387 A.2d 542 (1978). A hardship must be different in kind from that affecting generally other properties in the same district in order to justify granting a variance. Garibaldi v. Zoning Board of Appeals, 163 Conn. 235, 238, 303 A.2d 743
(1972). CT Page 9001
 By its very definition, a variance is granted with respect to a particular piece of property; it can be enjoyed not only by the present owner but by all subsequent owners. (citation omitted.) It follows then that a variance is not a personal exemption from the enforcement of zoning regulations. It is a legal status granted to a certain parcel of realty without regard to ownership.
Id., 239. Self-inflicted hardship arising due to actions by the applicant will not justify the granting of a variance. Id.
 Hardships in such instances as these do not arise from the application of Zoning regulations, per se, but from zoning requirements coupled with an individual's personal needs, preferences and circumstances. Personal hardships, regardless of how compelling or how far beyond the control of the individual applicant, do not provide sufficient grounds for the granting of a variance.
Id., 239-40; see also Pollard v. Zoning Board of Appeals,186 Conn. 32, 39, 438 A.2d 1186 (1982).
The defendant board denied plaintiff's application for a variance because no hardship was proven. The court concludes that the record supports this decision. As previously stated, the hardship an applicant claims must relate to the parcel for which the variance is sought. See Garibaldi, supra, 239. In this case plaintiff claims a hardship as to his island property, not as to the Bluff Avenue property, which is the property which would be affected by the variance. Further, the record shows than any hardship that may exist was created by the plaintiff, and relates to him personally, rather than to the land.
The record shows that at the time plaintiff purchased the Bluff Avenue property it was improved with a residence, a garage, and a foundation for a two-car garage. (ROR No. 1, Schedule B). Shortly after acquiring the property, plaintiff received permits to demolish the residence and garage foundation and to construct a new dwelling and a large garage. (ROR No. 1, Schedule B). After the garage was constructed and excavation begun for the dwelling, the plaintiff's personal circumstances changed so that he no longer needed or wanted to build a dwelling on the Bluff Avenue property. (ROR No. 1, Schedule B). The court concludes that the record shows the plaintiff failed to meet the requirements for granting a variance, and the CT Page 9002 decision of the board was, therefore, neither illegal, arbitrary, nor an abuse of discretion. Plaintiff's voluntary actions relative to the Bluff Avenue property created the predicament in which he now finds himself, and such actions do not justify the granting of a variance. Accordingly, the court concludes that plaintiff's appeal of the denial of his application for a variance is dismissed.
COCCO, JUDGE