[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a record or administrative appeal relating to property located at 154 Wood Avenue, in Bridgeport, in the Business Number 1 zone. The plaintiff, Delfin Zaldumbide d/b/a Zaldumbide Repairs, the owner of the premises at the above address, applied to the defendant, Zoning Board of Appeals of Bridgeport, for a special exception or permit[1] to conduct a limited automobile repair business, for approval of location pursuant to General Statutes 14-54, and for a variance to permit this use on property having less than 10,000 square feet in area. The defendant disapproved the three applications on April 11, 1992, and the plaintiff appealed pursuant to General Statutes8-8(a).[2] As the owner of the subject premises, the plaintiff was determined to be aggrieved, and thus have standing to pursue this appeal. Bossert v. Norwalk, 157 Conn. 279, 285, 253 A.2d 39
(1968); DiBonaventura v. Zoning Board of Appeals, 24 Conn. App. 369,375, 588 A.2d 245 (1991).
The record returned by the defendant indicates that the plaintiff purchased the subject premises in February, 1988. A garage located on the property had previously been used for a number of years by several different individuals as the site for the limited repair of automobiles. In December, 1987, as contract purchaser, the plaintiff applied to the defendant Zoning Board of Appeals seeking approval of location under General Statutes 14-54. The application was granted with conditions,[3]
but the approval lapsed because apparently the plaintiff had difficulty obtaining insurance and was unable to obtain a limited repairer's license from the Motor Vehicle Department.
In August, 1989, the plaintiff reapplied to the defendant CT Page 6962 agency, and again sought approval under the state statute for location of a limited motor vehicle repair business, as well as for waiver or variance of the area requirement in Chapter 19, Section 4 of the Bridgeport Zoning Regulations. That section permits such a use only on lots of at least 10,000 square feet of area, whereas the subject premises had approximately 5,500 square feet. In addition, the plaintiff sought a special exception for a conditionally permitted use in a Business No. 1 Zone. These applications were denied "without prejudice" in October, 1989, as the defendant was evidently concerned with the allegedly untidy appearance of the premises and the number of cars on or adjacent to the site.
In February, 1990, the plaintiff again applied to the Zoning Board of Appeals, for the same three approvals, all of which were rejected at a hearing held on April 11, 1990, at which several neighbors complained about automobiles being parked off-site.
The request for a special exception or permit was based on Chapter 11, Section 2(t)3 of the Bridgeport Zoning Regulations, which provides that repair of motor vehicles is permitted in the Business Number 1 zone only if approved by the Zoning Board of Appeals as a special exception.
Special exceptions are defined in Chapter 21, Section 2(b) of the regulations as uses which are permitted in a particular zone and have "a peculiar and unusual nature that may have a detrimental and devaluating effect upon the neighboring facilities," and thus require "particular consideration as to their location in relation to adjacent establishments or intended uses. . ." In addition, the defendant is obliged "to make such findings and stipulations as are necessary to protect property values in the district as a whole and the public health, safety, and welfare secured."
Moreover, in reviewing a special exception, the agency must consider a number of factors also set forth in that same section of the regulations: (1) the size and intensity of the proposed use and its effect on the city's plan of development; (2) the capacity of adjacent streets to handle any traffic increase; (3) the extent of the emission of noise, smoke, gas and similar pollutants; (4) any tax implications for the neighborhood; (5) parking facilities; (6) hazards relating to fire and police; and (7) "all other standards prescribed by these regulations for the use."
The application for approval of location for the limited repair of motor vehicles is based on General Statutes 14-54, which provides that a person wishing to repair motor vehicles must first obtain from a local agency "a certificate of approval CT Page 6963 of the location for which such license is desired." General Statutes 14-55 provides that a local authority may "waive" the requirement for a hearing if previous approval of location had been granted, but although the plaintiff had obtained approval in. 1987, the hearing at issue in this appeal was not waived in 1990.
The criteria for approval of location is set out in General Statutes 14-55, and requires a finding that the location is "suitable. . .with due consideration to its location in reference to schools, churches, theaters, traffic conditions, width of highway and effect on public travel."
Variances are permitted by Chapter 21, Section 2(e), only if "a literal enforcement of these regulations would result in exceptional difficulty or unusual hardship. . ."[4]
The Board's decision stated that it had "determined that the use of the subject site has changed due to the fact that the last legal use of the subject site for limited repair activity was in connection with a gasoline service station use which no longer exists. This has resulted in a change in appearance of the subject site which has had an adverse affect on the immediate area. Furthermore, the `Board' has determined that the conduct of only a repair facility at this location constitutes an overuse of the premises."
This court's function in reviewing an administrative agency's action is a limited one. "In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal." Double I Limited Partnership v. Plan Zoning Commission, 218 Conn. 65, 72, 588 A.2d 624 (1991). Moreover, the burden of proving that an agency such as the defendant acted improperly is on the plaintiff. Id., 73, n. 8. To the same effect is Caserta v. Zoning Board of Appeals, 28 Conn. App. 256,258-59, 610 A.2d 713 (1992).
It is somewhat difficult to understand the defendant's rationale for rejecting the suitability of location when it had on several previous occasions approved 154 Wood Avenue for limited repair of motor vehicles. See Bradley v. Inland Wetlands Agency, 28 Conn. App. 48, 50-51, 609 A.2d 1043 (1992) ("[a]dministrative agencies are impotent to reverse [themselves] unless (1) a change of condition has occurred since its prior decision or (2) other considerations materially affecting the merits of the subject matter have intervened and no vested rights. have arisen. . .The principle applies, however, only when the subsequent application seeks substantially the same relief as that sought in the former." CT Page 6964
The Board's rejection seems to be based on the fact that the premises were no longer serving as a gasoline station, and one might plausibly infer that this could result in a less intensive, rather than a more intensive or "overuse" of the site. Moreover, the statute appears to refer to the relationship between the site in question and other adjacent uses, eg., churches, schools, traffic, whereas the defendant seems to have focused exclusively on use of the site itself, and the fact that gasoline is no longer sold on the premises. See New Haven College, Inc. v. Zoning Board of Appeals, 154 Conn. 540, 543,227 A.2d 427 (1967) (applicant must prove the suitability of the site "in view of the proximity of schools, churches, theaters or other places of public gatherings, intersecting streets, traffic conditions, width of the highway and the effect of public travel," and must also prove that the proposed use "will not imperil the safety of the public").
In addition, the use of the premises for a gasoline station had apparently ceased prior to the December, 1987 approval of location, because the agency's decision does not refer to a gasoline service station, but only to "an existing repair garage building under new ownership. "
In view of the disposition of this appeal, however, it is not necessary to decide the issue of suitability of location, at least at this time. As recognized in Pleasant View Farms Development, Inc. v. Zoning Board of Appeals, 218 Conn. 265, 272,588 A.2d 1372 (1991), an alternative ground permitting plaintiff to conduct a limited repairer's business could be that such use constituted a legally valid nonconforming use. The Bridgeport regulations define a nonconforming use as one that "legally existed at the effective date of these regulations." Chapter 20, Section 1. Section 12 of this chapter provides, however, that if a nonconforming use "shall cease to be actually so used for a continuous period of one year, the privilege of resuming a nonconforming use thereof shall thereupon be terminated." Evidently plaintiff's use of the premises for limited repair of motor vehicles ceased for some eighteen months while he attempted to procure insurance and obtain a license from the Commissioner of Motor Vehicles. The defendant argues it its brief that this cessation of use effectively destroyed any argument that plaintiff could "establish a link to a use that predates. . .the effective date of the current version of the. . .zoning regulations." Pleasant View Development, Id., 273.
This contention, however, fails to take into account the change in the law regarding termination of nonconforming uses because of cessation of use as embodied inPublic Act 89-277, sec. 1, amending General Statutes 8-2, which now states that: CT Page 6965 "[s]uch regulations shall not provide for the termination of any nonconforming use solely as a result of nonuse for a specific period of time without regard to the intent of the property owner to maintain that use." Under this section, mere cessation of use for a period such as one year, as in the Bridgeport regulations, does not automatically terminate nonconforming uses. Rather, the issue is whether the property owner "intended" to cease or terminate such a use. The record discloses that as early as January 1959, permission for the reconstruction of an existing one-bay garage into a two-bay garage had been granted to a predecessor in title to the plaintiff.[5] The 10,000 square foot requirement only became effective July 1, 1975. The defendant mentions in its brief that the issue of whether the plaintiff's proposed use has been validated because it constitutes a legally nonconforming use was not considered by the defendant Board.
The issue of whether the plaintiff was attempting to extend or add to a legally nonconforming use by not selling gasoline was also not considered, at least in that context.
It appears logical, under these circumstances, to remand this appeal to the defendant to determine whether the plaintiff can prove the existence of a nonconforming use by showing that a limited repair facility was in existence on the effective date of the enactment of the Bridgeport regulations requiring a special permit, and/or that a variance for a lot of less that 10,000 square feet is not required. Pleasant View Development, supra, 272.
Accordingly, this case is remanded to the defendant to determine after a new hearing the impact of Public Law 89-277 on section 12 of Chapter 20 of its regulations; whether the plaintiff is attempting to enlarge or extend a nonconforming use in violation of Chapter 20, Section 3 of the Zoning Regulations;[6]
and also to state in more detail why the change in use from a gas station with a limited repairer's license to a use involving an existing garage for a limited repairer's license constitutes a change in circumstances warranting a denial of suitability of location under the state statute, when approval had been granted several times previously.
So Ordered.
Dated at Bridgeport, Connecticut, this 23rd day of July, 1992.
William B. Lewis, Judge