[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
INTRODUCTION
The captioned matter is an appeal from a decision ("decision") by the defendant ("board") which denied the plaintiffs appeal ("appeal") from an order ("order") issued to the plaintiff by the Willington zoning enforcement officer. The order directed the plaintiff to cease and desist from using property ("premises") owned by it as a parking lot. The plaintiff claims that the board failed to give notice of the type required by General Statutes § 8-7 of the hearing on the appeal, and that the decision was unsupported by the evidence or was clearly erroneous in view of all the evidence before the board.
STANDING
The court finds, from the testimony produced at the hearing before it, that the plaintiff is the owner of the premises, and that, therefore, it is aggrieved within the meaning of General Statutes § 8-8.
DISCUSSION
 Notice
General Statutes § 8-7 provides in relevant part:
Such board shall, within the period of time permitted under section 8-7d, hear such appeal and give due notice thereof to the parties. Notice of the time and place of such hearing shall be published in a newspaper having a substantial circulation in such than fifteen days, nor less than ten days, and the last not less than two days before such hearing. CT Page 8112
The excerpted portion of § 8-7 requires two separate types of notice. The latter is notice to the public, which must be given by publication and is not the subject of a claim by the plaintiff. The former is notice to an appellant to a zoning board of appeals, and it requires that an appellant be given "due notice" of the hearing on the appeal. It is the requirement of notice to an appellant with which the plaintiff claims the board failed to comply.
In the record is a letter from the attorney for the plaintiff to the chairman of the board containing the following request: "Please forward to me all future notices and other correspondence relating to (this) appeal." The hearing before the board began on January 11, 2001, and the transcript of that session reflects that the attorney for the plaintiff stated that the plaintiff did not receive notice of the time scheduled for the hearing until the plaintiffs attorney spoke to the planning office on the previous Friday. Thus, the plaintiff received at least some notice through its attorney, who did, in fact, appear and speak at the January 11 session and who, most importantly, did not request that the hearing be aborted and that the process be begun ab initio with new notice of a new hearing. Further, the transcript of the January 11 session reflects that the board continued the hearing until February 8 so that, in the words of the board's presiding officer, "perhaps Mr. Buccino (president of the plaintiff) could be here."
The transcript of the proceedings before the board on February 8, 2001 reflects that the attorney for the plaintiff and the attorney for the town of Willington jointly requested that the hearing be recessed until March 8, 2001, and that that request was granted.
The transcript of the proceedings before the board on March 8, 2001 reflects extensive testimony by several people, including the attorney for the plaintiff.
From the above, the court concludes that any defect in notice was cured by the following: the directive given to the board by the plaintiffs's attorney to treat him as the agent of the plaintiff for the purpose of receiving notice of hearings, coupled with the notice given to the plaintiff's attorney during the telephone conversation between him and a member of the planning staff on the Friday preceding the first session on the hearing; the appearance of the plaintiffs attorney at the January 11, February 8 and March 8 sessions of the hearing; the failure of the attorney for the plaintiff to object to any lack of notice, or to request that the notice and hearing process be reinitiated; the board's continuing of the hearing on two occasions; and, the absence of any suggestion of prejudice to the plaintiff resulting from any claimed CT Page 8113 defect in notice. Accordingly, it is held that the plaintiff has not established a violation of § 8-7.
Lack of Evidence
The petitioner claims that, in 1989, it constructed, in accordance with the then existing zoning regulations of Willington, a parking lot on the premises. The plaintiff acknowledges that at some time thereafter, but prior to 2000, the zoning regulations of Willington were amended so that parking was no longer a permitted use on the premises, and that when those amendments became effective, parking became a nonconforming use on the premises.
There was evidence before the board that the premises were not used for parking while parking was a permitted use, and that the premises were not used for parking prior to 2000. The plaintiff argues that, even if it never actually used the premises for parking, it nonetheless spent a considerable amount of money in the construction of the parking lot on the premises, and that it never intended to abandon the parking use, so that parking on the premises is now a nonconforming use. The board denied the appeal, without making express findings.
The following settled principles of law govern the decision in this case. "Where . . . the zoning commission fails to present a formal collective statement of reasons the court must search the entire record to find a basis for the commission's decision." West Hartford InterfaithCoalition, Inc. v. Town Council, 228 Conn. 498, 514, 636 A.2d 1342
(1994). "The plaintiffs bear the burden of proving the existence of . . . a nonconforming use." Pleasant View Farms Development, Inc. v. Zoning Boardof Appeals, 218 Conn. 265, 272, 588 A.2d 1372 (1991). "In an appeal from the decision of a zoning board, we therefore review the record to determine whether there is factual support for the board's decision, not for the contentions of the applicant." Id. 270. A nonconforming use must have been actual and existing at the time the use became nonconforming.Wing v. Zoning Board of Appeals, 61 Conn. App. 639, 644-45, 767 A.2d 131, cert. denied, 256 Conn. 90B, 772 A.2d 602 (2001). And, finally, "The court's function is to determine on the basis of the record whether substantial evidence has been presented to the board to support its findings." Id. 644.
Board's Reasons
In response to the mandate of West Hartford Interfaith Coalition, the court has searched the record and concludes that, as the basis for its denial of the appeal, the board determined that a parking lot had never been constructed on the premises and/or that the premises were not used CT Page 8114 for parking prior to 2000.
 Burden of Proof and Clearly Erroneous Standard
Under Pleasant View Farms, the plaintiff had the burden of proof as to the existence of parking as a nonconforming use. On that issue, the only witness produced by the plaintiff was its attorney, who candidly stated, at the March 8 session, "I have told you from the last hearing to now that I don't know the extent to which the lot has been used." That is not evidence which compelled a finding by the board that the plaintiff had met its burden of proving that, on the day the regulations were amended to prohibit parking on the premises, and down to the date of the commencement of the hearing before the board, parking was an actual and existing use on the premises. Therefore, the board's decision was not clearly erroneous.
Substantial Support
 Pleasant View Farms and Wing direct that the court determine whether the record contains substantial evidence supporting the board's action. Several witnesses offered evidence supporting the board's findings. A Mr. Patton testified on March 8 that he was the manager of a firm which owned property abutting the premises. Additionally, he stated that "I don't think the parking lot was ever completed . . ."
The transcript of the March 8 session also contains the following colloquies:
 Voice: [Undecipherable] that parking lot is overrun with [undecipherable] it's a bush, that lot was just full of it and you couldn't drive a car and and turn it around down there and those bushes [undecipherable] in the back in the north east corner [undecipherable] I don't have pictures to prove it but I have been there since `63 and I know that lot couldn't have been used the way it was before last fall.
 Mr. Mahoney: Have you seen the lot used since . . . 1963? Since it was . . .
 Voice: I've seen it used since last fall when he put a sign there, uh, "Mill Works Parking Lot" and he has one car parked there [undecipherable]
Mr. Mahoney: And prior to that sir? CT Page 8115
Voice: No [Undecipherable]
Vice-Chair: Anyone else? Yes, sir go ahead.
 Jim Humphrey: Hi Jim Humphrey I can attest also the fact that no cars have been parked there since 1969. And it wasn't until recently that cars started to show up over there.
The evidence quoted above constitutes substantial support for the board's action.
Actual and Existing Use
Under Wing, the plaintiff had the burden of proving that parking was an actual and existing use from the time the regulations were amended until the filing of the appeal. As indicated above, the board was free to refuse to credit the evidence offered by the plaintiff on that point, and it obviously did so. Having acted within its discretion as the trier, it cannot be said, as a matter of law, that the board's action was clearly erroneous.
CONCLUSION
The appeal is denied.
 __________________ G. Levine, J.