[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this administrative appeal, the plaintiff, Antonino Panebianco, seeks the reversal of the Town of Wethersfield Zoning Board of Appeals' (the "ZBA") decision which granted the application for variances submitted by his neighbor, defendant Robert F. Gaynor (the application). In the application, based on a claim of hardship, Gaynor seeks to erect an addition to his residence, located at 20 Orchard Hill Drive in Wethersfield,[1] in order to establish a second living unit therein for his elderly mother-in-law. For the reasons stated below, the court sustains the appeal and directs the ZBA to deny the application.
 I. PROCEDURAL BACKGROUND
By complaint and appeal dated May 2, 2002, Panebianco challenged the ZBA's decision, rendered at its meeting held on April 15, 2002, to grant the application. Panebianco and Gaynor briefed the issues.[2]
Panebianco raised the following contentions in his brief: (1) the application does not present a legally cognizable hardship and (2) the record is devoid of any of the considerations required by General Statutes § 8-6 (a)(3) which would give rise to the proper granting of a variance in the instant case.[3] Oral argument was heard on February 13, 2003.
 II. AGGRIEVEMENT
Panebianco owns real property, located at 861 Prospect Street in Wethersfield, which abuts that owned by Gaynor and which is the subject of the application. Gaynor's property abuts Panebianco' s on Panebianco's northerly boundary. See Plaintiff's Exhibits 1 (deed to Panebianco) and 2 (deed to Robert F. Gaynor and Susan G. Gaynor). The court finds that Panebianco, as an abutter, is aggrieved by the decision and has standing to appeal. See General Statutes § 8-8 (a)(1);[4] Water PollutionControl Authority v. Keeney, 234 Conn. 488, 494, 662 A.2d 124 (1995); CT Page 2905-nWalls v. Planning Zoning Commission, 176 Conn. 475, 477, 408 A.2d 252
(1979).
 III. FACTS
The record reveals the following facts. In the application, dated March 26, 2002, Gaynor sought "variance (1) to erect an addition of which a portion will be over the front building line and into the rear yard setback; (2) to establish a second living unit in the addition; and (3) to build over the percent of lot coverage." Return of Record, Exhibit 1 (hereafter "Record, Exh. ___"). In response to the questions on the application form, "Is hardship claimed?," and "If so, what is the specific hardship?," the application states, "Mother-in law is 81, recently broke her wrist and pelvic bone, doctors advised she should not live alone, cannot afford assisted living accommodations." Record, Exh. 1.
In a statement attached to the application, Gaynor described the plan as being for an addition of a "mother-in-law suite," consisting of "a bedroom, family room, bathroom, and kitchen with a sink, refrigerator and microwave." Record, Exh. 1. The statement further describes the proposal: "[t]he addition would be built 34 feet deep by 22 feet wide off the back of the garage. It would be 14' on the right side and 6' on the left side over the 40' building line. Since the connection from our house and the entrance to the addition would be through the garage, taking space from the garage where our cars are presently parked, we would need to add 16' onto the front of the garage to accommodate [sic] our cars. This would go over the building line by 6'." Record, Exh. 1. The statement also notes that shrubbery will be planted around the addition. See Record, Exh. 1. A survey was also submitted, which depicts the portions of the addition which would go over the setback distances referenced above. Record, Exh. 8.
Gaynor submitted several letters from neighbors which supported the proposed addition. Record, Exhibits 2-5.
The ZBA held a public hearing concerning the application on April 15, 2002. Record, Exhibits 6 (legal notice) and 7 (transcript of public hearing). By letter dated April 17, 2002 (Record, Exh. 9), the ZBA advised Gaynor that the application was approved, "subject to the stipulation that the second living unit shall be limited to family use only." No basis for the approval was cited in this letter. Legal notice of the ZBA's decision was printed in The Hartford Courant. See Record, Exh. 10.
This appeal ensued. Additional references to the facts are set CT Page 2905-o forth below.
 IV. STANDARD OF REVIEW
On an appeal from a zoning board's decision to grant or deny a variance, the court must decide whether the board's exercise of its discretion was unreasonable, arbitrary, or illegal. See R R Pool Patio v. Zoning Board of Appeals, 257 Conn. 456, 470, 778 A.2d 61
(2001); Bloom v. Zoning Board of Appeals, 233 Conn. 198, 206, 658 A.2d 559
(1995) ("Bloom"). "It is well settled that a court, in reviewing the actions of an administrative agency, is not permitted to substitute its judgment for that of the agency or to make factual determinations on its own." (Internal quotation marks omitted.) R R Pool Patio v. ZoningBoard of Appeals, supra. In applying the law to the facts of a particular case, the board is endowed with a liberal discretion. See Wood v. ZoningBoard of Appeals, 258 Conn. 691, 697, 784 A.2d 354 (2001). "Courts are not to substitute their judgment for that of the board . . . and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing . . ." (Internal quotation marks omitted.) Bloom, 233 Conn. at 206.
"The trial court's function is to determine on the basis of the record whether substantial evidence has been presented to the board to support [the board's] findings." (Internal quotation marks omitted.) Stancuna v.Zoning Board of Appeals, 66 Conn. App. 565, 568, 785 A.2d 601 (2001). "The burden of proof to demonstrate that the board acted improperly is upon the plaintiffs." Bloom, 233 Conn. at 206.
"Where a zoning agency has stated its reasons for its actions, the court should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations . . ." (Internal quotation marks omitted.) ProtectHamden/North Haven From Excessive Traffic Pollution, Inc. v.Planning Zoning Commission, 220 Conn. 527, 544, 600 A.2d 757
(1991). However, this principle applies "where the agency has rendered a formal, official, collective statement of reasons for its actions." Id.
Where there is no "formal, collective official statement of reasons," the court is obligated to "search the record for a basis upon which to uphold the commission's decision." Id., 545. As the Appellate Court stated inStankiewicz v. Zoning Board of Appeals, 15 Conn. App. 729, 732,546 A.2d 919 (1988), aff'd, 211 Conn. 76, 556 A.2d 1024 (1989), "[i]f the board fails to give the reasons for its actions, or its reasons are inadequate, the trial court must search the record to determine whether a basis exists for the action taken." In so doing, the court "may rely on CT Page 2905-p any reason culled from the record which demonstrates a real or reasonable relationship with the general welfare of the community in concluding that the board's decision should be upheld." Id., 733.
Our Supreme Court has cautioned that, "[i]n reviewing the actions of a land use commission, we must recognize that the commission is composed of laymen whose procedural expertise may not always comply with the multitudinous statutory mandates under which they operate." (Internal quotation marks omitted.) Quarry Knoll II Corp. v. Planning ZoningCommission, 256 Conn. 674, 730, 780 A.2d 1 (2001). "The case law requiring the trial court on appeal to search the record for the agency's reason for its decision is a practical and fair reaction to this scenario." Gagnon v. Inland Wetlands Watercourses Commission,213 Conn. 604, 611, 569 A.2d 1094 (1990). Even where a reason given is, "merely a conclusory statement," the reviewing court must search the record for reasons to support the decision. Id., 609.
 V. DISCUSSION A. Hardship
While the ZBA's notice did not cite "hardship" as the basis for its decision, a review of the record shows that to be the reason why the application was approved. In addition to the references already made to the record above at pp. 3-4, the court notes that, at the public hearing, Gaynor stated, "This is a hardship application." Record, Exh. 7, p. 2. He then explained his mother-in-law's situation and reiterated that "[h]er doctors have now advised us that she shouldn't live alone and we've spent a month investigating alternatives to adding an addition to the house and we found this is our best solution." Record, Exh. 7, p. 2. He added, "[w]e'd like to keep the family together. I try to provide for my family. Up until a month or so ago, my mother-in-law was able to live by herself, she lived on . . . (inaudible) and she had an accident and fell and severely broke her . . . (inaudible) and pelvic bone and she can hardly walk now." Record, Exh. 7, p. 2.
No questions were raised at the hearing by the members of the ZBA about the nature of the claimed hardship. Rather, most of the few questions posed to Gaynor by the members of the ZBA concerned the size of the addition, and, in particular, the proposed changes to the garage. See Record, Exh. 7, pp. 3-6. In view of Gaynor's presentation, it is evident that the ZBA approved the application based on the claimed hardship.
Our Supreme Court repeatedly has set forth the standards which are to be applied to a request for a zoning variance. "An applicant for a CT Page 2905-q variance must show that, because of some peculiar characteristic of his property, the strict application of the zoning regulation produces an unusual hardship, as opposed to the general impact which the regulation has on other properties in the zone . . . Accordingly, we have interpreted General Statutes (Rev. to 1993) § 8-6 to authorize a zoning board of appeals to grant a variance only when two basic requirements are satisfied: (1) the variance must be shown not to affect substantially the comprehensive zoning plan, and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan. Proof of exceptional difficulty or unusual hardship is absolutely necessary as a condition precedent to the granting of a zoning variance . . . A mere economic hardship or a hardship that was self-created, however, is insufficient to justify a variance; . . . and neither financial loss nor the potential for financial gain is the proper basis for granting a variance." (Internal quotation marks omitted, citations omitted, and footnote omitted.) Bloom, 233 Conn. 207. Further, "[t]he hardship must originate in the regulation or ordinance and arise from the application of the regulation or ordinance to the subject property . . . Financial considerations are relevant only if the application of the regulation or ordinance practically destroys the value of the property for any use to which it may be put and the regulation or ordinance as applied to the subject property bears little relationship to the purposes of the zoning plan." (Citations omitted.) Bloom,233 Conn. 209-10.
As our Supreme Court further explained in Bloom, "the fact that an owner is prohibited from adding new structures to the property does not constitute a legally cognizable hardship." Bloom, 233 Conn. 210, n. 13.
The record before the ZBA does not demonstrate that denial of the requested variances would result in "exceptional difficulty or unusual hardship" as provided in General Statutes § 8-6 (a)(3). Nothing in the record shows that there is anything unique about the Gaynor parcel as it pertains to the zoning requirements. The claimed hardship does not relate to the parcel. Rather, it relates to the circumstances of the family which lives in the residence located on the parcel. "Personal hardships, regardless of how compelling or how far beyond the control of the individual applicant, do not provide sufficient grounds for the granting of a variance." (Internal quotation marks omitted.) Spencer v.Zoning Board of Appeals, 15 Conn. App. 387, 391, 544 A.2d 676 (1988) (quoting Garibaldi v. Zoning Board of Appeals, 163 Conn. 235, 239-40,303 A.2d 743 (1972)).
In addition, there is no evidence to show, and Gaynor does not claim, CT Page 2905-r that the application of the setback requirements practically destroys the value of his property for any use to which it may be put. The property already has been put to beneficial use with the existing residential structure. Thus, it cannot be said that denial of the application would deprive Gaynor of the reasonable and proper use of the property. SeeStankiewicz v. Zoning Board of Appeals, supra, 15 Conn. App. 735. Likewise, there is no evidence in the record as to how the application of the zoning regulations "greatly decreases or practically destroys" the value of the property. Dolan v. Zoning Board of Appeals, 156 Conn. 426,431, 242 A.2d 713 (1968). Denial of the application will not render the Gaynors' property valueless and will not amount to a taking.
In his brief, Gaynor asserts that Connecticut's law on the subject is "very cold and inhumane." Defendant's Brief, p. 2. Our Supreme Court repeatedly has stated, "[i]t is well settled that the granting of a variance must be reserved for unusual or exceptional circumstances."Cumberland Farms, Inc. v. Town of Groton, 247 Conn. 196, 215, 719 A.2d 465
(1998). Boards and courts cannot proceed otherwise.
"If it is a hardship to not be able to use one's property as one wishes, then most setback variance applications would have to be granted." (Internal quotation marks omitted.) Bloom, 233 Conn. 210, n. 13. Clearly, that is not the case under Connecticut law, since "the power to grant variances from the strict application of zoning ordinances should be carefully and sparingly exercised." (Internal quotation marks omitted.) Pleasant View Farms Development, Inc. v. Zoning Board ofAppeals, 218 Conn. 265, 270, 588 A.2d 1372 (1991). "Financial considerations alone . . . cannot govern the action of the board. They are bound to take a broader view than the apparent monetary distress of the owner. Otherwise, there would be no occasion for any zoning law . . . In accord with these principles, this court has decided many times that financial detriment to a single owner of property would not of itself warrant relaxation on the ground of practical difficulty or unnecessary hardship." (Internal quotation marks omitted and citations omitted.)Piccirillo v. Board of Appeals On Zoning, 139 Conn. 116, 120, 90 A.2d 647
(1952).
Our Supreme Court has further explained the rationale underlying the concept that variances are to be granted only in limited circumstances. "[U]nless great caution is used and variances are granted only in proper cases, the whole fabric of town-and city-wide zoning will be worn through in spots and raveled at the edges until its purpose in protecting the property values and securing the orderly development of the community is completely thwarted." (Internal quotation marks omitted.) Pleasant ViewFarms Development, Inc. v. Zoning Board of Appeals, supra, CT Page 2905-s218 Conn. 270-71.
The court notes also that Gaynor's brief sets forth various background events and contentions, including, for example, his contentions that Panebianco stated that he would withdraw the appeal if the addition were smaller and that Panebianco spends relatively little time at home. See Defendant's Brief; pp. 3-5. These matters, which were not part of the record before the ZBA, may not be considered by the court. They are not "necessary for the equitable disposition of the appeal." Hovanesian v.Zoning Board of Appeals, 162 Conn. 43, 45, 290 A.2d 896 (1971); see General Statutes § 8-8 (j).
The record before the ZBA shows that Gaynor did not demonstrate hardship as that term has been interpreted by our Supreme Court and prescribed by our legislature in General Statutes § 8-6, quoted above.[5] Substantial evidence does not support the ZBA's decision. In approving the application, it acted illegally and arbitrarily, and abused its discretion.
That Gaynor and his family are engaging in a laudable effort to assist his mother-in-law at a difficult time is not in question. Those circumstances, however, do not constitute a legally cognizable hardship as that term has been explained in Connecticut statutory and decisional law concerning the granting of zoning variances.
 B. Relief
In his prayer for relief, Panebianco requests the court (1) to sustain his appeal and declare the ZBA's decision null and void and (2) to order the ZBA to deny the application. "When, on a zoning appeal, it appears that as a matter of law there was but a single conclusion which the zoning authority could reasonably reach, the court may direct the administrative agency to do or to refrain from doing what the conclusion legally requires." Thorne v. Zoning Commission, 178 Conn. 198, 206,423 A.2d 861 (1979). "[A] court may reverse or affirm, wholly or partly, or may modify or revise, the [zoning] decision appealed from, and may order the zoning agency to take certain actions only if no other course is legally available to the agency." (Internal quotation marks omitted.)Preston v. Connecticut Siting Council, 20 Conn. App. 474, 484,568 A.2d 799, cert. denied, 214 Conn. 803, 573 A.2d 316 (1990); see General Statutes § 8-8 (k).
Here, in view of the absence of proof before the ZBA of a legally cognizable hardship, the law requires the conclusion that the application be denied. See Schwartz v. Planning Zoning Commission, 208 Conn. 146, CT Page 2905-t 155-56, 543 A.2d 1339 (1988).
 CONCLUSION
The plaintiff has sustained his burden to show that the ZBA's approval of the application was arbitrary, illegal, and an abuse of discretion. The appeal is sustained, the ZBA's decision is declared null and void, and the matter is remanded to the ZBA with the direction to deny the application. It is so ordered.
 BY THE COURT ROBERT B. SHAPIRO JUDGE OF THE SUPERIOR COURT