RONALD WING ET AL. *v.* ZONING BOARD OF
APPEALS OF THE TOWN OF CROMWELL
(AC 19435)

Schaller, Mihalakos and Stoughton, Js.

Argued October 31, 2000—officially released February 6, 2001

*Joel M. Ellis*, for the appellants (plaintiffs).

*Mark K. Branse*, for the appellee (defendant).

*Opinion*

STOUGHTON, J. The plaintiffs, Ronald Wing and Candice Wing, appeal from the judgment of the trial court dismissing their appeal from the decision of the defendant, the zoning board of appeals of the town of Cromwell (board). The defendant seeks review of the court's denial of its motion for sanctions against the plaintiffs for having filed a frivolous appeal.[1] We affirm the judgment of the trial court.

---

[1] We need not consider this claim because the defendant failed to raise it in a cross appeal pursuant to Practice Book § 61-8. See *Futterleib* v. *Mr. Happy's, Inc.*, 16 Conn. App. 497, 499, 548 A.2d 728 (1988); see also *Blue Cross/Blue Shield of Connecticut, Inc.* v. *Gurski*, 47 Conn. App. 478, 480–81, 705 A.2d 566 (1998) (although prevailing party at trial generally not aggrieved within meaning of Practice Book § 4005, now § 61-8, aggrievement can be

On September 9, 1997, Fred Curtin, the development compliance officer of the town of Cromwell, ordered the plaintiffs to remove all of the horses from their property, citing §§ III, paragraph 3.1.37, and XI, paragraph 11.10, of the Cromwell zoning regulations. The plaintiffs appealed from the cease and desist order to the board. The appeal was heard and denied on February 3, 1998. Thereafter, the plaintiffs appealed to the court. The court dismissed the appeal and upheld the decision of the board. This appeal followed.

The plaintiffs claim that (1) the court improperly approved the invalidation of a legally nonconforming use because it was inconsistent with later zoning regulations, (2) the court illegally applied the current regulations to invalidate an existing nonconforming use, (3) the court approved the board's restriction on the nonconforming use when the restriction was inconsistent with prior ordinances, (4) that the actions of the board and the court were arbitrary, capricious and unreasonable, and (5) if the actions of the board and the court were arbitrary, those actions were sufficiently outrageous to violate substantive due process. Those five claims depend on the plaintiffs' assertion that they had established a legal nonconforming use. We are not persuaded.

The following facts and procedural history are necessary for our resolution of this appeal. The plaintiffs have owned the property at 95 South Street in Cromwell since 1994. The property consists of 2.3 acres in a residential zone.[2] Prior to August 19, 1997, the zoning regu-

---

found where relief awarded falls short of relief sought). We note that even if we were to consider the defendant's claim, it would not succeed because the plaintiffs' arguments on appeal to the trial court were not wholly without merit.

[2] The plaintiffs' property is 2.3 acres, inclusive of wetlands. The nonwetlands classified portion of the plaintiffs' property is approximately 4500 square feet, or 0.1 acres.

lations did not have any provisions that concerned the keeping of horses or other large animals on residential property. The town did, however, have municipal ordinances that defined large animal pets and permitted residential property owners to keep them on their premises under certain conditions. The size and number of large animal pets permitted was determined by a land area to animal weight ratio.[3] Those municipal ordinances were repealed on June 12, 1997.

On August 19, 1997, §§ III, paragraph 3.1.37,[4] and XI, paragraph 11.10,[5] of the zoning regulations took effect. Section III, paragraph 3.1.37, defines large domestic animal pets to include horses, goats and sheep used for personal pleasure only. Section XI, paragraph 11.10, requires that property owners in a residential zone obtain a use permit to keep large domestic animal pets,

---

[3] Cromwell Code, art. II, § 82-5, provides in relevant part: "LARGE ANIMAL PETS—Animals usually kept outside the house which are primarily for pleasure rather than for profit. . . ."

Cromwell Code, art. II, § 82-7, provides in relevant part: "A. A large animal pet may be kept if there exists a contiguous area behind the building line and ten (10) feet within the common property lines, equivalent to ten (10) times the standard adult weight of the animal (as set forth in breed standards) expressed in square feet. . . ."

[4] Section III, paragraph 3.1.37, of the zoning regulations provides in relevant part: "Large Domestic Animal Pet: Large domestic animal pet shall include, but not be limited to, horse, cow, calf, goat, sheep, and llama, for personal pleasure only. . . ."

[5] Section XI, paragraph 11.10, of the zoning regulations provides: "The keeping of a Large Domestic Animal Pet shall be permitted as an accessory use for single family dwellings in residential zones only upon the issuance of a Use Permit. The Large Domestic Animal Pet must be owned by the resident occupant and there shall be a minimum area of three (3) acres devoted to the first Large Domestic Animal Pet and 1/2 acre for each additional Large Domestic Animal Pet. Watercourses, as defined in section 22a-38 of the Connecticut General Statutes, shall not be included in the calculation of area. The grazing area of Large Domestic Animal Pets shall be restricted to no closer than ten (10) feet from the property boundary and prohibited entirely from the Front Yard. Manure piles and buildings housing Large Domestic Animal Pets shall be a minimum of one hundred (100) feet from adjacent property lines."

and requires that the property consist of no fewer than three acres of nonwetlands soil for the first large domestic animal pet maintained on the property and another one-half acre for each additional large domestic animal pet. The plaintiffs' property does not meet those standards because it lacks the acreage required for even one large domestic animal pet. In addition, the plaintiffs conceded that they never obtained a use permit.

In their appeal to the board, the plaintiffs claimed the right to maintain, on their property, two horses that they had owned for many years, one pony that they had owned for almost three years and one sheep. They also asserted that they had kept various other large domestic animals on their property since 1994. The plaintiffs now claim that because they kept a pony and a horse on their property prior to the date the new zoning regulations took effect, the keeping of the pony and the horse are legal nonconforming uses. Moreover, they argue that because they used their property to maintain certain large domestic animals prior to the new zoning regulations, keeping *any* large domestic animal that meets the land area to animal weight ratio required by the repealed municipal ordinances constitutes a legal nonconforming use. We disagree.

In reviewing the actions of a zoning board of appeals, we note that the board is endowed with liberal discretion and that its actions are subject to review by the courts only to determine whether they are unreasonable, arbitrary or illegal. *Pleasant View Farms Development, Inc.* v. *Zoning Board of Appeals*, 218 Conn. 265, 269, 588 A.2d 1372 (1991). "The burden of proof to demonstrate that the board acted improperly is upon the party seeking to overturn the board's decision." (Internal quotation marks omitted.) Id., 269–70. "[A] zoning board of appeals hears and decides an 'appeal' de novo." *Conetta* v. *Zoning Board of Appeals*, 42 Conn. App. 133, 137, 677 A.2d 987 (1996). "It is the board's

responsibility, pursuant to the statutorily required hearing, to find the facts and to apply the pertinent zoning regulations to those facts. *Toffolon* v. *Zoning Board of Appeals*, 155 Conn. 558, 560–61, 236 A.2d 96 (1967); *Connecticut Sand & Stone Corporation* v. *Zoning Board of Appeals*, 150 Conn. 439, 442, 190 A.2d 594 (1963). In doing so, the board 'is endowed with a liberal discretion . . . .' Id. Indeed, under appropriate circumstances, the board 'may act upon facts which are known to it even though they are not produced at the hearing.' *Parsons* v. *Board of Zoning Appeals*, 140 Conn. 290, [292,] 99 A.2d 149 (1953)." *Caserta* v. *Zoning Board of Appeals*, 226 Conn. 80, 90, 626 A.2d 744 (1993). Upon an appeal from the board, the court must focus on the decision of the board and the record before it. Id., 90–91.

It is well settled that the courts should not substitute their own judgment for that of the board and that the decisions of the board will not be disturbed as long as an honest judgment has been reasonably and fairly made after a full hearing. *Conetta* v. *Zoning Board of Appeals*, supra, 42 Conn. App. 137–38. "The court's function is to determine on the basis of the record whether substantial evidence has been presented to the board to support its findings." Id., 138. Upon an appeal from the judgment of the trial court, we review the record to see if there is factual support for the board's decision, not for the contentions of the applicant; *Pleasant View Farms Development, Inc.* v. *Zoning Board of Appeals*, supra, 218 Conn. 270; to determine whether the judgment was clearly erroneous or contrary to law. *Fuller* v. *Planning & Zoning Commission*, 21 Conn. App. 340, 344, 573 A.2d 1222 (1990).

"A nonconforming use is merely an 'existing use' the continuance of which is authorized by the zoning regulations." *Melody* v. *Zoning Board of Appeals*, 158 Conn. 516, 519, 264 A.2d 572 (1969). "To be a nonconforming use the use must be actual. It is not enough

that it be a contemplated use nor that the property was bought for the particular use. The property must be so utilized as to be irrevocably committed to that use." (Internal quotation marks omitted.) *Lebanon* v. *Woods*, 153 Conn. 182, 197, 215 A.2d 112 (1965). "[T]o be irrevocably committed to a particular use, there must have been a significant amount of preliminary or preparatory work done on the property prior to the enactment of the zoning regulations which unequivocally indicates that the property was going to be used for that particular purpose." *Karls* v. *Alexandra Realty Corp.*, 179 Conn. 390, 399, 426 A.2d 784 (1980).

In this case, the record reveals that the plaintiffs kept a variety of animal pets on their property after they moved to 95 South Street in 1994. Candice Wing herself, however, stated on the record that her horse, Glider, was boarded at another farm and that she "dragged [it] home" on or about August 12, 1997, before the new zoning regulations took effect, "to make sure that something was standing on the property." There is no indication in the record that horses were ever kept on the plaintiffs' property prior to that date. Rather, that horse was specifically brought onto the property in an attempt to create a nonconforming use. See *Wallingford* v. *Roberts*, 145 Conn. 682, 684, 146 A.2d 588 (1958).

The record also reveals that no preliminary or preparatory work was done to the plaintiffs' property for the upkeep of a horse prior to the enactment of the new zoning regulations. The plaintiffs' property has not been irrevocably committed to keeping horses thereon and, therefore, keeping the horse on the property had not been established as an actual and existing use on August 19, 1997. Thus, there was sufficient evidence in the record for the board to find that there was no legal existing nonconforming use of the horse on the plaintiffs' property prior to and on the day the new zoning

regulations took effect, and we conclude that the court's judgment was not clearly erroneous or contrary to law.

With respect to the pony, the record indicates that the plaintiffs' pony had been kept on the property prior to August 19, 1997, the effective date of the new zoning regulations. The record also indicates, however, that the pony had been at "Amy's Udder Joy" petting zoo, which also is in Cromwell, since before April 15, 1997, and was *not* actually on the plaintiffs' property on August 19, 1997. The owner of the petting zoo used the pony to attract individuals to the zoo and to give pony rides to children who patronized the zoo. Although the plaintiffs were not actually paid for the use of their pony, the record reveals that the petting zoo boarded and fed the pony at no charge to the plaintiffs. Furthermore, the petting zoo charged visitors a small fee to ride on the pony.

We conclude that there was sufficient evidence in the record from which the board could have found that use of the property for keeping the pony had been abandoned and that the use was neither existing nor actual on August 19, 1997, the date the new zoning regulations took effect. We conclude that there was sufficient evidence in the record for the board to find that there was no legal nonconforming use of the pony on the plaintiffs' property on August 19, 1997, and that the court's judgment was not clearly erroneous or contrary to law.

The plaintiffs, nevertheless, argue that because they were permitted to keep a certain number of large domestic animal pets on their property[6] under the

---

[6] Since 1994, the plaintiffs have kept a number of different animals on their property. A December, 1995 report disclosed that a potbellied pig, a large goat, a pygmy goat, several chickens, a rooster, turkeys and three dogs existed on the plaintiffs' property. An April 4, 1997 report disclosed that a pony, a sheep, two goats, two rabbits and two chickens existed on the plaintiffs' property.

repealed municipal ordinances, and because there was a sheep and a pygmy goat on the property on August 19, 1997, they had established a legal nonconforming use of the premises for *any* large domestic animal pet pursuant to the repealed municipal ordinances. The board does not contest the right of the plaintiffs to keep those animals on the premises for which a nonconforming use had been established on August 19, 1997. The plaintiffs assert, however, a right to keep *any* large domestic animal pet on the premises so long as they do not exceed the former land area to animal weight ratio. We disagree.

The plaintiffs are not merely seeking an intensification of a legal nonconforming use, but a change in the character of the use. "A change in the character of a use . . . constitute[s] an unlawful extension of the prior use." *Helicopter Associates, Inc.* v. *Stamford*, 201 Conn. 700, 716, 519 A.2d 49 (1986). In this case, the animals that were deemed legal nonconforming uses can be kept on the plaintiffs' 95 South Street property. The addition of other kinds of large animals, including the horses, constitutes an unlawful extension of the prior use.

Moreover, the zoning regulations provide in § IX, paragraph 9.1,[7] that a use *lawfully* existing when zoning regulations take effect may be continued. In this case, when the new zoning regulations took effect, the munic-

---

[7] Section IX, paragraph 9.1, of the zoning regulations provides in relevant part:

"a. Any building or use *lawfully* existing . . . may be continued subject to compliance with the following conditions:

"1. Any use of land or buildings which does not conform to the requirements specified by these regulations shall not be:

"a. Changed to another non-conforming use without a Special Permit from the Board of Appeals, and then only to one equally, or more nearly in conformity.

"b. Re-established for any reason after non-use longer than one year." (Emphasis added.)

ipal large animal pet ordinance already had been repealed and the use no longer was lawful. Thus, the plaintiffs do not have a right to keep their horses or pony on their 95 South Street property. Finally, in light of our decision, the defendant's renewed motion to strike the plaintiffs' appendix will not be reconsidered.

The judgment is affirmed.

In this opinion the other judges concurred.