[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The Mansfield Zoning Enforcement Officer, Curt Hirsch, seeks an injunction, civil fines, and attorney's fees, under General Statutes § 8-12, to curtail alleged violations of the Mansfield zoning regulations by the respondent, George A. Negro, on property located at 76 Fern Road in Mansfield. On September 5, 2001, the court held an evidentiary hearing on this matter and finds the following facts.
The respondent has owned the property under scrutiny for many years. In 1963, this land fell within a rural/agricultural zone which classification permitted the storage of motor vehicles for commercial purposes upon the issuance of a special use permit by the Mansfield Planning and Zoning Commission (PZC). The respondent applied for such a permit "for [a] commercial garage" to be operated at that location. On September 20, 1963, the PZC granted the respondent a special permit "to build a garage to have school buses on his property on Fern Road." At that time, the respondent had secured a contract with the town to provide school bus transportation. In 1969, the respondent obtained another special use permit to erect a second garage at the site for the same purpose. In 1977, the respondent lost this contract with the town. The school buses were removed from the property, and no registered school buses have been sheltered at the site since then.
In 1973, the Mansfield zoning scheme was changed, and the zone which embraced the respondent's land was reclassified from rural/agricultural to rural/agricultural/residential (RAR40). Under the reclassified zone, the housing of school buses or any other commercial use, unrelated to farming or ancillary to a residence, was prohibited. At least since CT Page 12481 1963, the respondent has not used this property for agricultural or residential purposes. Because the respondent had housed school buses legitimately under the old zoning structure, the new zoning regulations allowed him to maintain that operation as a nonconforming use.
As noted above, from 1978 on, however, the respondent stopped harboring school buses on the land. Instead, in 1980 the respondent began to store industrial lubricants in the garage. Prompted by the complaints of neighbors, in August 1980 the PZC instructed the then ZEO, Edward Beattie, to notify the respondent that, in the absence of a new special permit granted by the PZC, such commercial activity was barred under the zoning regulations. On August 6, 1980, Beattie complied with this instruction and notified the respondent, in writing, of this infraction.
The respondent never sought PZC approval to engage in any other commercial use of his land. For several years, no activity occurred on the parcel. In 1986, neighbors observed that the respondent began to store restaurant equipment and supplies at the site. Following another round of complaints, on May 15, 1986, the present ZEO, Hirsch, issued to the respondent a cease and desist order requiring the respondent to terminate this new warehouse activity.
On May 21, 1986, Hirsch wrote to the respondent informing him that PZC was contemplating finding that the nonconforming use of housing school buses on the property had been abandoned by the respondent. Article IX, § D.5. of the Mansfield Zoning Regulations creates a presumption that a nonconforming use which is discontinued for more than one year has been abandoned, and the right to exercise the nonconforming use is lost. Through Hirsch, the PZC invited the respondent to provide that Commission with information demonstrating his interest to continue in housing school buses on the land. This matter was placed on the PZC agenda at five separate meetings to afford the respondent ample time to respond. On July 7, 1986, the respondent requested that the issue be postponed to the July 21, 1986, meeting. The PZC acceded to this request, but the respondent declined to submit anything to the Commission to rebut the presumption of abandonment. On July 21, 1986, the PZC found that the nonconfonning use of housing school buses had been abandoned. As a result of this decision, Hirsch issued another cease and desist order, on July 26, 1986, directing the respondent terminate all commercial activity on the property within ten days.
On October 27, 1998, the respondent asked the Mansfield Town Planner, Gregory Padick, for permission to store vehicles and boats on the property. Hirsch responded to this request by mailing a letter to the respondent explaining that the previously allowed nonconforming use had been abandoned and any storage of any vehicles on the property as CT Page 12482 requested would violate the local zoning laws. The respondent appealed this ruling by Hirsch to the Mansfield Zoning Board of Appeals (ZBA). On February 10, 1999, the ZBA denied the appeal. The respondent never appealed to the Superior Court from this adverse decision by the ZBA as he could have under General Statutes § 8-8.
Despite the decisions by the PZC, ZBA, and warnings from Hirsch, the respondent commenced a new business of motor vehicle repair and restoration at the property. The respondent had employees transport unregistered vehicles which the respondent acquired through auctions, foreclosure sales, and the retrieval of abandoned motor vehicles from sundry locations to the Fern Road site. These vehicles were in various stages of disrepair. Some lacked doors, or a hood and others were mere shells or chassis. As many as fifteen vehicles were on the property at one time. The respondent's mechanics would work on the vehicles to repair or restore them or cannibalize others to the same end. Also, the respondent rented garage space for repair of a boat which repair took about six months.
On March 15, 1999, Hirsch issued the third cease and desist order demanding that the respondent refrain from maintaining a junk yard and storing vehicles and scrap metal at the property within ten days. The respondent disobeyed this order and continued to violate the Mansfield zoning regulations.
In the spring of 2001, the scrap metal piles were removed. The respondent continues to store and repair vehicles at the location. After this case was set for trial, the respondent removed vehicles which were sitting outdoors. However, even as the trial proceeded the respondent still keeps nine vehicles, including a dump truck, in the garage and operates a commercial activity. All but two of the vehicles are unregistered.
Essentially, the respondent contends that the issuance by the PZC of the special permit for one commercial use, to house school buses, in 1963, entitles him to use his land for other commercial purposes forever. The court rejects this argument.
The special permits granted in 1963 and 1969 were limited in scope to the housing of school buses. When the zoning district was reclassified in 1973, that use was no longer permitted in that zone. The respondent could lawfully maintain that activity after that date, however, because the Mansfield zoning regulations allowed formerly permitted uses to continue as nonconforming uses. But in 1977, that nonconforming use was abandoned by the respondent when he lost the school transportation contract with the town and ceased housing the buses there. He has never resumed that CT Page 12483 activity on the property.
The local PZC and ZEO provided the respondent with numerous opportunities to demonstrate an intent to maintain that nonconforming use, but he failed to do so. A local zoning authority can make the determination that a nonconforming use has been abandoned and lost legitimacy thereby, Loulis v. Parrott, 42 Conn. App. 272, 282 (1996). Independently of that determination by the PZC, this court also concludes that the respondent abandoned the nonconforming use regarding the sheltering of school buses on the property.
A nonconforming use is merely an existing use authorized by Zoning regulations, Wing v. Zoning Board of Appeals, 61 Conn. App. 639, 644
(2001). An indisputable goal of zoning is to eliminate nonconforming uses "with all the speed justice will tolerate," Northeast Parking v. Planningand Zoning Commission, 47 Conn. App. 284, 294 (1997). One nonconforming use, therefore, cannot be substituted for another indiscriminately.
To determine whether a current activity is within the scope of an authorized nonconforming use, the court must consider three factors: (1) the extent to which the current use reflects the nature and purpose of the original use; (2) the differences in character, nature, and kind of the uses involved; and (3) any substantial difference in impact upon the neighborhood, Bauer v. Waste Management of Connecticut, 234 Conn. 221,236 (1995). Applying these criteria to the facts existing in the present case, the court determines that storing industrial lubricants and restaurant material and operating a motor vehicle storage and repair shop are activities which pass outside the scope of housing school buses.
The difference in character of these enterprises is apparent. School buses are operated for short periods of the day and only on days when school is in session. At other times one would reasonably expect the property to be quiet and passive. In contrasts, the stripping of vehicles for parts, the running of air compressors, the sanding and other manipulations of sheet metal, the testing of engines, etc. is noisy, redolent, dusty, and encompasses much hustle and bustle.
The current Mansfield zoning regulation disallows commercial uses in the RAR40 zone unless these uses are accessory to residential or farming purposes. The respondent makes no claim that his vehicle repair operation is such an ancillary use. The court finds that the respondent has wilfully persisted in violating the Mansfield zoning regulations by engaging in forbidden commercial activities on 76 Fern Road at least since 1986 when the PZC and ZEO warned him to refrain from such enterprises on that parcel. Despite receiving the most recent cease and desist order, dated March 15, 1999, the respondent persists in CT Page 12484 unauthorized commercial use up to the present date.
The respondent also asserts as a defense a variety of improprieties regarding the rulings by the PZC, ZBA, and ZEO regarding his abandonment of the nonconforming use and refusal to grant him permission to conduct a vehicle storage and repair business on the land. First, the respondent never utilized himself of the appeal processes available to one dissatisfied with the decisions of these zoning authorities. The failure of a party to exhaust administrative remedies bars that party from testing the same issues in a collateral proceeding, Loulis v. Parrott, supra, 190. Secondly, no evidence was proffered by the respondent to support these assertions.
Pursuant to § 8-12, the court enjoins the respondent from maintaining on the 76 Fern Road property a motor vehicle junkyard, from operating a vehicle storage or repair facility, or engaging in any other commercial activity not specifically permitted in a RAR40 zone under the Mansfield zoning regulations. The respondent is ordered to remove all motor vehicles, motor vehicle parts, machinery, and equipment from the property by October 15, 2001. The respondent is ordered to permit the zoning enforcement officer or his designee(s) to inspect the property immediately and again on October 15, 2001 and again every thirty days thereafter without interference. After October 15, 2001, the town of Mansfield may enter the property solely for the purpose of removing such forbidden material which remains there, at the expense of the respondent. The expenses reasonably incurred for such removal shall constitute a lien against the property.
Additionally, the respondent must pay a civil fine of $1500 to the Mansfield Town Treasurer by November 15, 2001, for wilfully violating the March 15, 1999, cease and desist order. Because the court has imposed this fine, no additional daily fines for past violations or attorney's fees are awarded.
Sferrazza, J.