[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I STATEMENT OF APPEAL
The plaintiffs, Robert Redenz and Lorraine Redenz (the Redenzes), appeal from the decision of the defendant, the Zoning Board of Appeals of the Town of New Fairfield, sustaining the cease and desist order issued by the New Fairfield zoning enforcement officer (ZEO) on April 9, 1997. The Redenzes appeal pursuant to General Statutes § 8-8.
 II CT Page 15216 BACKGROUND
The record reveals the following facts. Since 1971, the Redenzes have been operating a meat, poultry and provisions distribution business from their property located at 4 Charcoal Ridge Road West, New Fairfield, Connecticut. (Return of Record [ROR], Item H-6, pp. 63, 99-100.) The Redenzes' property is located in a residentially zoned area. (ROR, Items G-1; G-2.) The ZEO received complaints from the Redenzes' neighbors concerning, inter alia, the parking of two refrigerated meat trucks in the Redenzes' driveway, the idling of the trucks early in the morning, the noise emanating from the running of the trucks' compressors during the night and the discarding of by-products of the business on the property. (ROR, Items H-7, pp. 58-60; J-H-1.) The ZEO inspected the property and found the Redenzes in violation of the residential use restrictions for the zone in which they reside, zone R-44. (ROR, Items, H-7, pp. 59-60; J-H-15.)
On April 1, 1997, the New Fairfield Zoning Commission reviewed the findings of the ZEO and the complaints made by the Redenzes' neighbors regarding the activity taking place on the Redenzes' property. (ROR, Item D-1, pp. 1-3.) The commission gave the Redenzes until June 30, 1997 to comply with the zoning regulations. (ROR, Items D-1, p. 2; H-1.) On April 9, 1997, the Redenzes were issued a cease and desist order by the ZEO, which stated that "the parking and storage of two commercial registered trucks exceeding one (1) ton capacity violates the Zoning Regulations." (ROR, Item E-1.) The order lists violations of §§ 3.1.1/3.2.1 d, 3.1.8/3.2.8 a b and 2.11 of the New Fairfield Zoning Regulations, and noted that an inspection of the subject premises would take place after June 30, 1997. (ROR, Item E-1.) The Redenzes appealed the issuance of the cease and desist order. (ROR, Item J-A.) On June 19, 1997, the ZBA declined to hear the appeal because the Redenzes failed to make service on the ZEO or the zoning commission as required by General Statutes § 8-7. (ROR, Items J-D-1, 2; J-G.) The Redenzes appealed the ZBA's decision. (ROR, Item E-3.) The court, Radcliffe, J., dismissed the appeal. (ROR, Item E-3, p. 10.)
The ZEO filed an application in Superior Court for a temporary and permanent injunction ordering the Redenzes to comply with the cease and desist order. (Complaint, Exhibit B.) The Redenzes argued that the use of the property "constitutes a nonconforming use," therefore, they "are permitted to use the property notwithstanding the cease and desist order." (Complaint, Exhibit B, p. 3.) The court, Radcliffe, J., denied the ZEO's request for injunctive relief stating that although the Redenzes' "procedural lapse allowed the cease and desist order to stand, without challenge. . . . where the [Redenzes] claim a vested right in land, an administrative hearing on the merits is mandatory, prior to those vested CT Page 15217 rights being forfeited or extinguished." (Complaint, Exhibit B, pp. 7-8.) The court also directed the Redenzes "to submit the issue of the validity of the claimed nonconforming use, along with other issues raised by the cease and desist order of April 9, 1997, to the New Fairfield Zoning Board of Appeals for hearing and determination." (Complaint, Exhibit B, pp. 8-9.)
The ZBA conducted a public hearing on June 29, 2000, to discuss the validity of the preexisting nonconforming use claimed by the Redenzes, and other issues raised by the cease and desist order. (ROR, Item H-6.) At the hearing, the chairman stated that the proceeding was taking place pursuant to a court order, and that the ZBA had previously declined to hear the appeal on its merits based on a jurisdictional defect. (ROR, Item H-6, p. 10.) A discussion was held concerning which issues were before the ZBA in light of the court order, and, subsequently, the chairman stated that procedural and jurisdictional issues with respect to the cease and desist order would be heard. (ROR, Item H-6, pp. 11-17.) Following the testimony of several witnesses, including Karen Handsford, the Redenzes' neighbor, and Robert Redenz, the ZBA unanimously voted to adjourn the hearing and continue it to a date, time and place to be determined. (ROR, Item H-6, pp. 169-70.) The hearing was continued on August 10, 2000. (ROR, Item H-7.) The public hearing was closed, and the proceeding was continued to a future date. (ROR, Item H-7, pp. 249-50.)
On November 9, 2000, the ZBA unanimously voted to sustain the cease and desist order in all respects and without modification. (ROR, Items C-16, H-8, p. 99.) Specifically, the ZBA voted that: (1) the cease and desist order was not defective as to its date, the year of the regulations cited, and the ZBA found that there was no evidence of discriminatory enforcement; (ROR, Item H-8, pp. 14-15); (2) the 1967 zoning regulations governed the activity taking place on the Redenzes' property in 1971; (ROR, Item H-8, p. 99); and (3) the activity complained of was not in conformity with, or authorized by, the 1967 zoning regulations, therefore, there was no preexisting nonconforming use. (ROR, Item H-8, pp. 31, 44, 100.) The ZBA agreed that no permits were sought for the activity taking place on the property and that the use of the property included outward evidence of commercial use. (ROR, Item H-8, p. 100.) The ZBA also voted that if it is found that there was a valid preexisting nonconforming use, the absence of the vehicle owners from the subject property for a seven to eight year period constitutes abandonment of any prior nonconforming use, and the nonconforming use had been illegally expanded over the years. (ROR, Item H-8, p. 100.) The ZBA's decision was published in the Citizen News on November 15, 2000. (ROR, Item C-16.) The Redenzes now appeal the ZBA's decision.
 III CT Page 15218 JURISDICTION
General Statutes § 8-8 governs an appeal from a decision of a zoning board to the Superior Court. "A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." (Internal quotation marks omitted.)Cardoza v. Zoning Commission, 211 Conn. 78, 82, 557 A.2d 545 (1989).
 A Aggrievement
"[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal."Jolly, Inc. v. Zoning Board of Appeals, 237 Conn. 184, 192, 676 A.2d 831
(1996). A plaintiff's status as owner of the subject property establishes aggrievement. Winchester Woods Association v. Planning and ZoningCommission, 219 Conn. 303, 308, 592 A.2d 953 (1991).
In the present case, the Redenzes allege that they are owners of the property that is the subject of the cease and desist order. (Complaint, Count One, ¶¶ 1, 10.). Additionally, a property card and a warranty deed, which were submitted as part of the return of record, indicate that the Redenzes are the property owners of the subject premises. (ROR, Items E-15; E-18.) The court finds that the Redenzes are aggrieved patties.
 B Timeliness of the Appeal and Service of Process
General Statutes § 8-8 (b) provides, in pertinent part, that an "appeal shall be commenced by service of process in accordance with subsections (e) and (f) [now subsections (f) and (g)] of this section within fifteen days from the date that notice of the decision was published as required by the general statutes." Service of process "shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality." General Statutes § 8-8 (e), now § 8-8 (f).
The decision of the ZBA was published in the Citizens News on November 15, 2000. (ROR, Item C-16.) Service of process was made on the town clerk of the town of New Fairfield and the chairman of the ZBA on November 28, 2000. (Sheriff's return.) The court finds that service of process was made in a timely manner on the proper parties. CT Page 15219
 IV SCOPE OF REVIEW
When the action of a zoning enforcement officer is the subject of an appeal to the zoning board of appeals, the decision of the board, and the record before it is the focus of the court's review. Caserta v. ZoningBoard of Appeals, 226 Conn. 80, 82, 626 A.2d 744 (1993). The court does not focus on the decision of the zoning enforcement officer when reviewing the decision of the board. Id. "Local zoning boards are vested with a liberal discretion. . . . A trial court must, however, review the decision of a zoning board of appeals to determine if the board acted arbitrarily, illegally or unreasonably." Wnuk v. Zoning Board ofAppeals, 225 Conn. 691, 695-96, 626 A.2d 698 (1993).
"The court's function is to determine on the basis of the record whether substantial evidence has been presented to the board to support its findings." (Internal quotation marks omitted.) Conetta v. ZoningBoard of Appeals, 42 Conn. App. 133, 138, 677 A.2d 987 (1996). In searching the record, the court must determine whether it contains substantial evidence from which the ultimate finding could be inferred.Grillo v. Zoning Board of Appeals, 206 Conn. 362, 369, 537 A.2d 1030
(1988). "Courts are not to substitute their judgment for that of the board . . . and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing. . . . Upon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons. . . . The burden of proof to demonstrate that the board acted improperly is upon the plaintiffs." (Internal quotation marks omitted.) Bloom v. Zoning Board of Appeals, 233 Conn. 198, 206,658 A.2d 559 (1995).
 V DISCUSSION
The ZBA sustained the ZEO's cease and desist order dated April 9, 1997. The Redenzes appeal that decision on the ground that the ZBA acted arbitrarily, illegally and in abuse of its discretion. The Redenzes argue that the cease and desist order is invalid and improper. They also argue that the ZBA, in sustaining the cease and desist order, acted outside of its authorization by basing its decision on activity not cited in the order. Additionally, the Redenzes argue that the ZBA incorrectly interpreted the 1967 zoning regulations and that the use of their property to park two commercial vehicles constitutes a preexisting CT Page 15220 nonconforming use. Finally, the Redenzes raise the issue of a conflict of interest against counsel for the defendant.[1]
The ZBA argues that the cease and desist order is valid and was properly issued. The ZBA further argues that its decision to sustain the cease and desist order was based on violations of zoning regulations cited in the order. The ZBA also contends that the Redenzes failed to establish that they benefit from a valid preexisting nonconforming use.
 A Whether the Cease and Desist Order Was Improperly Issued and Violated the Decision of the New Fairfield Zoning Commission
The Redenzes allege and argue that the cease and desist order is invalid and improper because: (1) the order violates the April 1, 1997 decision of the commission; (2) the order references current zoning regulations rather than the 1967 zoning regulations; and (3) they benefit from a preexisting nonconforming use.[2] The Redenzes also argue, but do not allege, discriminatory enforcement of the zoning regulations.
The ZBA argues that the Redenzes' assertion that the cease and desist order is improper because it was issued before the compliance deadline set by the commission at the April 1, 1997 meeting lacks legal authority. The ZBA contends that the ZEO, acting as an agent of the commission, was within her authority when she issued the cease and desist order. The ZBA further argues that the Redenzes were not harmed by the issuance of the cease and desist order because the order essentially reiterates the orders of the commission, and the compliance date stated in the order is the same as the date set by the commission.
A zoning commission "shall provide for the manner in which the zoning regulations shall be enforced." General Statutes § 8-3 (e). "Most zoning regulations designate a zoning enforcement officer with responsibility for ensuring compliance with the zoning regulations." T. Tondro, Connecticut Land Use Regulation (2d Ed. 1992) pp. 512-13. "The zoning enforcement officer is empowered to issue written orders to cease carrying on activities prohibited by the regulations." Id., 514.
Section 4.1 of the New Fairfield Zoning Regulations provides, in pertinent part, that "[t]he Zoning Enforcement Officer shall act as the authorized agent of the Zoning Enforcement Commission and shall be responsible for the administration and enforcement of these regulations. The [ZEO] shall be responsible to the Commission. The [ZEO] may . . . cause any . . . place or premises to be inspected and may order, in writing, the discontinuance of any use of property, or the remedying of CT Page 15221 any condition which shall be found to exist therein or thereon in violation of any provision of these regulations."
In the present case, the ZBA heard testimony from Mara Porwitzki, the former New Fairfield ZEO, regarding the issuance and scope of the cease and desist order. (ROR, Item H-7, pp. 57-138.) Porwitzki testified that prior to April 1, 1997, the commission heard testimony, which spanned several months, regarding not only the parking of the Redenzes' commercial vehicles but also the commercial activity taking place on the property. (ROR, Item H-7, p. 59-60.) She also testified that she attended the April 1, 1997 commission meeting where she was authorized to issue the cease and desist order to the Redenzes. (ROR, Item H-7, p. 59.) Porwitzki further testified that the zoning regulations cited in the cease and desist order pertaining to home occupation and the storage of trucks were consistent with the evidence heard and considered by the commission. (ROR, Item H-7, pp. 75-76.)
The record demonstrates that at the April 1, 1997 meeting, the commission found that the 1967 zoning regulations were applicable to the present dispute. (ROR, Item D-1, p. 2.) The record also reveals that the commission voted three to two against passing a motion stating that the activity taking place on the Redenzes' property was allowable under the 1967 regulations. (ROR, Item D-1, p. 2.) Furthermore, the record demonstrates that the Redenzes were given until June 30, 1997, to comply with the zoning regulations. (ROR, Items D-1, pp. 2-3; H-1.) This compliance date was reiterated in the cease and desist order. (ROR, Item E-1.) In regard to the claim of discriminatory enforcement, the record reveals a history of cease and desist orders issued by the ZEO regarding the parking of trucks in residentially zoned areas. (ROR, Item D-13.)
In reaching a unanimous consensus on the validity of the cease and desist order, the ZBA discussed the evidence from the commission meeting and noted that there had been extensive discussions not only about the parking of the commercial vehicles, but also the nonconforming use of the property. (ROR, Item H-8, pp. 9-15.) The chairman of the ZBA stated that there was "nothing . . . legally defective about the process used to issue the [c]ease and [d]esist [o]rder, including, but not limited to, its date, the particular year of the regulation cited and whether there is any evidence of discriminatory enforcement in its issuance." (ROR, Item H-8, p. 14.) The chairman also noted that "the issuance of the [c]ease and [d]esist [o]rder simply gave practical effect to the [the Commission's order]." (ROR, Item H-8, p. 10.) The court finds that the ZBA reasonably determined, based on the evidence before it, that the cease and desist order was properly issued, and is, therefore, valid.
 B CT Page 15222 Whether the ZBA Based its Decision on Activities Cited in the Cease and Desist Order
The Redenzes contend that the ZBA acted outside of its authority when it sustained the cease and desist order based on activity not cited in the order. The Redenzes argue that because the order specifically states that the "parking and storage of two commercial registered trucks exceeding one (1) ton capacity violates the [z]oning [r]egulations," it was improper for the ZBA to consider, and base its decision on violations relating to the commercial use of the property.
The ZBA argues that its decision to sustain the cease and desist order was based on violations cited in the order. The ZBA asserts that the order references violations of §§ 3.1.1/3.2.1 d;[3] 3.1.8/3.2.8 a 
b;[4] and 2.11[5] of the zoning regulations, which pertain to permitted residential uses, storage of commercial vehicles and the site plan review process.
"The cease and desist order [is] neither a pleading nor a summons and [is] not required to conform to the niceties of such institutions. The general rule is well established that where a specified mode of giving notice is prescribed by statute, that method is exclusive. . . . But where . . . the form of notice is not prescribed, no particular form of words is essential in order to constitute notice. . . . [I]t is sufficient if a party is fully and fairly informed of the claim and has full opportunity to defend or to participate in the defense." (Citations omitted; internal quotation marks omitted.) Lomazzo v. Zoning Board ofAppeals, Superior Court, judicial district of Fairfield, Docket No. 306397 (January 27, 1994, Levin, J.).
The record demonstrates that the cease and desist order issued to the Redenzes clearly sets forth the zoning regulations which serve as the basis for the order. (ROR, Item E.) The order provides that: "This order is based on the decision of the Zoning Commission on April 1, 1997, that the parking and storage of two commercial registered trucks exceeding one (1) ton capacity violates the Zoning Regulations. These conditions violate the following sections of the Zoning Regulations of the Town of New Fairfield, Connecticut: Sections 3.1.1/3.2.1 d, 3.1.8/3.2.8 a b and 2.11." (ROR, Item E.) The record also reveals that during deliberations the ZBA limited its discussion to the zoning regulations cited in the order. (ROR, Item H-8, pp. 75-86, 99-100.) The court, therefore, concludes that based on the zoning regulations cited in the cease and desist order, it was reasonable for the ZBA to consider the parking and storage of the commercial vehicles on the Redenzes' property, as well as the commercial use of the property. CT Page 15223
 C Whether the ZBA Correctly Interpreted the 1967 New Fairfield Zoning Regulations
The Redenzes argue that the ZBA incorrectly interpreted the 1967 regulations. They contend that because the regulations do not expressly mention the parking of personal or commercial vehicles in their residentially zoned area, such activity is not regulated, and is, therefore, permissible. The Redenzes also argue that the testimony of their witnesses at the public hearing supports their argument that the parking of commercial vehicles in the residential area during the 1970s was prevalent, and, therefore, permitted.
The ZBA argues that the 1967 regulations are permissive in character in that uses are automatically excluded unless expressly permitted. The ZBA further argues that although the parking of commercial trucks in residential areas may have been prevalent in 1971, this does not mean that such activity was in conformity with the 1967 zoning regulations.
"Zoning ordinances are either `permissive' or `prohibitive.' Most regulations are the former type, where a use is automatically excluded unless it is expressly permitted in the zoning regulations. Under the prohibitory type of ordinance uses are allowed except those expressly prohibited. To avoid uses being allowed by mistake most municipalities have the permissive type of ordinance. In addition to uses which are expressly allowed in the ordinance, the regulations for each district may contain provisions allowing uses only with special permits granted by the commission." R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (1999) § 4.10, p. 64; see also Smith v. Old Lyme ZoningBoard of Appeals, Superior Court, judicial district of New London at New London (January 23, 2001, Purtill, J.T.R.), citing Gordon v. Zoning Boardof Appeals, 145 Conn. 597, 604, 145 A.2d 746 (1958).
"As a general rule, a zoning commission is not prevented by delay or the doctrine of laches from enforcing its zoning laws. It is also the general rule that the doctrine of estoppel does not prevent a municipality from exercising its police power. R. Fuller, 9A Connecticut Practice Series: Land Use Law and Practice (1999) § 53.1, p. 569, citing Bianco v. Darien, 157 Conn. 548, 556, 254 A.2d 898 (1969).
The record reveals the following regarding the 1967 regulations. In 1967, the Redenzes' property was located in zone B, a residential zone. (ROR, Items F-1, p. 26; G-1; G-2.) There are certain "allowable commercial uses" in zone B.[6] (ROR, Item F-1, pp. 9-12.) The ZBA CT Page 15224 evaluated the Redenzes' nonconforming use under article IV, § 6(G) and (K) of the zoning regulations, to determine whether the commercial use of the property in zone B was authorized. (ROR, Item, pp. 18-31.)
The ZBA determined that the 1967 zoning regulations expressly permit, rather than prohibit, certain commercial uses in zone B. (ROR, Item, H-8, p. 30.) The court finds that the ZBA correctly interpreted the 1967 zoning regulations and reasonably determined that the regulations are permissive in character.
 D Whether the ZBA's Decision that the Redenzes Do Not Benefit From a Valid Preexisting, Nonconforming Use of the Property is Supported by Substantial Evidence in the Record
The Redenzes challenge the ZBA's finding that they do not benefit from a preexisting nonconforming use.[7] The Redenzes argue that the 1967 zoning regulations do not expressly prohibit them from parking two commercial vehicles on their property, therefore, the use, which began in 1971, is protected as a preexisting nonconforming use under the current regulations. Additionally, the Redenzes' contend that the ZBA's decision to sustain the cease and desist order is not supported by substantial evidence in the record.
The ZBA argues that the 1967 regulations do not authorize any of the commercial uses on the Redenzes' property. The ZBA further argues that because the activities taking place on the Redenzes' property in 1971 are not permitted under the 1967 zoning regulations, the current use is not protected as a preexisting nonconforming use.
A nonconformity is described as a "use or structure prohibited by the zoning regulations but . . . permitted because of its existence at the time the regulations are adopted." Adolphson v. Zoning Board of Appeals,205 Conn. 703, 710, 535 A.2d 799 (1988). General Statutes "[§] 8-2
protects the right of a user to continue the same use of the property as it existed before the date of the adoption of the zoning regulations. . . . (Citations omitted; internal quotation marks omitted.)Bauer v. Waste Management of Connecticut, Inc.,234 Conn. 221, 240, 662 A.2d 1179 (1995). To be considered a nonconforming use, the use must be: (1) lawful; and (2) in existence at the time the zoning regulations making the use nonconforming were enacted. Cummings v. Tripp, 204 Conn. 67, 91-92,527 A.2d 230 (1987). "The [property owner] bears the burden of proving the existence of a nonconforming use." Bauer v. Waste Management ofConnecticut, Inc., supra, 240. CT Page 15225
"It is the board's responsibility, pursuant to the statutorily required hearing, to find the facts and to apply the pertinent zoning regulations to those facts." (Internal quotation marks omitted.) Wing v. Zoning Boardof Appeals, 61 Conn. App. 639, 643-44, 767 A.2d 131, cert. denied,256 Conn. 908, 772 A.2d 602 (2001). "Generally, it is the function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether. a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The trial court has to decide whether the board correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts." (Internal quotation marks omitted.) Spero v. Zoning Board of Appeals, 217 Conn. 435,440, 586 A.2d 590 (1991).
Article IV; § 6(G) of the 1967 zoning regulations provides: "Business conducted (as by mail or telephone) in a building where there is no outward appearance of such commercialism on the premises or the approaches thereto, except such signs as are permitted by the Commission.
Article IV, § 6(K) of the 1967 regulations states that: "The storage or concentration of business equipment on the premises by contractors owning the premises, for contracts to be performed elsewhere, where there is no other outward evidence of such commercial use on the premises or the approaches thereto, provided such equipment is housed or is arranged in an orderly way on a plot of land set aside for such purpose and each piece of equipment shall be stored at least 100 feet from the property line and 100 feet from the highway unless otherwise invisible from the highway. Temporary variances or relaxations from this provision may be granted by written permit from the Commission."
The record reveals the following regarding the Redenzes' use of their property. Since 1971, the Redenzes have been operating a meat, poultry and provisions distribution business from their property, which is in a residential zone. (ROR, Items G-1; G-2; H-6, pp. 63, 99-100.) The Redenzes' adult son, and another individual, are employees of the business. (ROR, Item H-6, pp. 124, 135-36.) The Redenzes utilize refrigerated commercial vehicles as part of the business operations. (ROR, Item H-6, pp. 17, 99-100, 159-60.) The size and type of commercial vehicles have varied over the years. (ROR, Items H-6, p. 17; J-H-14.) The Redenzes park and store the commercial vehicles in their driveway overnight. (ROR, Items H-6, p. 69; H-8, p. 15-16.) The trucks are parked no more than twenty-five feet from the neighbor's property line and sometimes extend beyond the driveway up to the edge of the road. (ROR, Item H-4, pp. 19, 23-24.) Currently, there are two commercial trucks CT Page 15226 associated with the Redenzes' business, a Ford 350, with a capacity of one ton, and an International, with a capacity in excess of one ton. (ROR, Items A; H-6, pp. 72-75; H-8, 65-71.) Both of the trucks display commercial advertising. (ROR, Item B-7.) Activity associated with the operation of the business, and which take place on the property include: the running of the refrigeration units while the trucks are parked in the driveway (ROR, Item H-6, pp. 70, 129); the loading and unloading of products from the trucks (ROR, Items B-7; H-4, pp. 26-27, 142-43); the storage of products on the property (ROR, Item H-6, pp. 142-43); and the cleaning of the interior and exterior of the trucks (ROR, Item B-7, pp. 95-96). Zoning permits for the commercial use of the property or for the commercial vehicles were never obtained by the Redenzes. (ROR, Items H-4, p. 83; H-6, pp. 143-45.)
The record further demonstrates that the ZBA heard the testimony of Mara Porwitzki, the ZEO who issued the cease and desist order, Maria Hausher-Hughes, the current ZEO, and the Redenzes' neighbors, Kathleen Varda and Kevin Early. (ROR, Item H-7.) The ZBA also viewed a video, prepared by the Redenzes' neighbors, depicting the commercial activity taking place on the Redenzes' property. (ROR, Item H-7, pp. 148, 154.) The record also shows that evidence was submitted, via live demonstration, of the sound of the refrigeration unit on the smaller of the two trucks owned by the Redenzes. (ROR, Item H-7, pp. 201-04.)
The ZBA evaluated the Redenzes' use of their property under Article IV, § 6(G) and (K) of the 1967 zoning regulations. (ROR, Item H-8, p. 22.) The ZBA determined that subsection G was inapplicable because the Redenzes' business was not conducted by mail or telephone, although there was evidence of an outward appearance of commercialism. (ROR, Item H-8, pp. 19-23.) The ZBA did, however, find that subsection K, which pertains to the storage or concentration of business equipment by contractors for contracts to be performed elsewhere, was applicable in determining whether the Redenzes' use in 1971 was permitted under the 1967 regulations. (ROR, Item H-8, pp. 23-31.) The ZBA determined that the Redenzes were not in compliance with subsection K because there was outward evidence of commercialism on the property, and the Redenzes' business equipment, the commercial trucks, were not stored at least one hundred feet from the property line and one hundred feet from the highway. (ROR, Item H-8, pp. 23-31.) Additionally, the ZBA found that the Redenzes never applied for a permit for a temporary variance or relaxation of the provisions, as required in subsection K. (ROR, Item H-8, pp. 24-26, 30-31.) The ZBA unanimously agreed that the activity on the Redenz property in 1971 was not authorized or in conformity with the 1967 regulations. (ROR, Item 11-8, p. 31.)
The ZBA is entitled to some discretion in enforcing laws as long as it CT Page 15227 is reasonable. The court finds that the ZBA reasonably determined, based on the evidence before it, that the Redenzes' use of their property in 1971 did not conform with the 1967 zoning regulations, therefore, they do not benefit from a preexisting nonconforming use. Because there is substantial evidence in the record to support a finding of no preexisting nonconforming use, the court need not examine the issues related to abandonment of the nonconforming use and illegal expansion.
Based on the foregoing reasons, the Redenzes' appeal is dismissed. The ZBA did not act arbitrarily, illegally, capriciously or in abuse of its discretion when it sustained the cease and desist order.
White, J.